426 So.2d 1158 (1983)
Ruth CAMPBELL and Structural Homes, Inc., a Florida Corporation, Appellants,
v.
MONROE COUNTY, a political Subdivision of Florida, and Howard B. Johnson, Building Official, Appellees.
No. 82-724.
District Court of Appeal of Florida, Third District.
February 8, 1983.
*1159 Randy Ludacer, Key West, for appellants.
Lucien C. Proby, Jr., County Atty. and E. Nelson Read, Asst. County Atty., Key West, for appellees.
Before BASKIN and DANIEL S. PEARSON, and FERGUSON, JJ.
FERGUSON, Judge.
This appeal is taken from an order denying injunctive relief. Appellants are a manufacturer of factory-built (modular) housing and a purchaser of one of its factory-built single-family homes.
On December 15, 1980, the Building Department of Monroe County, relying on Section 19-195 of the County Code,[1] issued a letter rejecting CAMPBELL's application to construct a modular home on property zoned RU-1M.[2] By an amended complaint appellants sought a judgment to declare that the ordinance establishing a special zoning district had been enacted solely to insure aesthetic uniformity in the district and was not intended to restrict particular building materials or construction techniques.
The county contends that under Section 553.38(2), Florida Statutes (1979),[3] it has *1160 authority, within its police powers and by statute, to enforce local land use and zoning requirements including the establishment of architectural and aesthetic standards within certain residential areas; that the enactment and enforcement of section 19-195 of the Monroe County Code which precludes, in an area zoned RU-1M, residences constructed of materials other than masonry, is a proper exercise of that zoning authority.
We agree that a Florida county may enforce zoning requirements which primarily regulate aesthetic appearances. City of Coral Gables v. Wood, 305 So.2d 261 (Fla. 3d DCA 1974) citing to Sunad, Inc. v. City of Sarasota, 122 So.2d 611 (Fla. 1960); Rotenberg v. City of Fort Pierce, 202 So.2d 782 (Fla. 4th DCA 1967). Cf. International Company, Inc. v. City of Miami Beach, 90 So.2d 906 (Fla. 1956) (zoning based only on aesthetics valid if general welfare of the community depended upon preserving its beauty). Contra Women's Kansas City St. Andrew Society v. Kansas City, Mo., 58 F.2d 593 (8th Cir.1932) (zoning ordinance enacted merely to satisfy purely aesthetic desires is unconstitutional and violative of due process); State v. Woodworth, 33 Ohio App. 406, 169 N.E. 713 (Ct.App. 1929). However, we focus on that portion of Section 553.38(2), Florida Statutes (1979) which requires that local authorities enforce their regulations "without any distinction as to whether such building is a conventionally constructed or manufactured building", and with which the county's actions appear to conflict.
The State Department of Community Affairs is exclusively authorized, by Section 553.38, Florida Statutes (1979), to promulgate and enforce rules assuring that factory-built housing is structurally sound and properly installed on site. Part VI of the Building Construction Standards, Chapter 553, Florida Statutes (1979) is entitled: State Minimum Building Codes. Local governments with building construction regulation responsibilities are, by its provision, permitted to impose more stringent requirements than those established by the State Minimum Building Codes only where (1) there is a determination that because of local conditions, more stringent requirements are needed in order to protect life and property and, (2) the added requirements do not discriminate against materials, products or construction techniques of demonstrated capabilities. § 553.73(3)(a) and (b), Fla. Stat. (1979).[4]
The undisputed testimony of the county's Building Official at trial, in part, was as follows:
Q. [counsel] Are you familiar with the kind of construction that Mr. Inman does with structural homes?
A. [Mr. Johnson] Yes. Like I said a while ago I have inspected these houses in the field. The house is structurally sound. It meets all the requirements of the building codes of Monroe County. There's no problem with the actual construction of the building.
* * * * * *

*1161 Q. And in fact if the work is well done, you can stand twenty feet away and not tell the difference (between masonry and structural construction)?
A. That's right.
Q. Then from an aesthetic point of view it doesn't make any difference because they both look the same?
A. Yes, they will both appear as a masonry constructed house, that is correct.
Q. So, the requirement of masonry construction as opposed to a masonry appearance is not for aesthetic purposes, is it?
A. Right.
* * * * * *
Q. Their interpretation of this particular ordinance has nothing to do with aesthetics. They are concerned about how it is put together?
A. That is correct.
Q. Ordinarily you find the requirement of how you put things together in the building code, don't you?
A. Yes.
Q. But in this one particular case it's in the zoning ordinance.
A. That is correct.
The trial court found that the housing constructed by appellants was "strong" but not masonry as required by the ordinance and held the requirement for masonry construction is a proper zoning requirement which is not "arbitrary and discriminatory and in no way violates the Florida Statute suggested by the plaintiffs". We disagree.
An ordinance must not conflict with any controlling provisions of a state statute and if any doubt exists, doubt is to be resolved against the ordinance in favor of the statute. Retail Credit Company v. Dade County, Florida, 393 F. Supp. 577 (S.D. Fla. 1975) (ordinance must not conflict with controlling provisions of general law); Rinzler v. Carson, 262 So.2d 661 (Fla. 1972); City of Miami Beach v. Rocio Corp., 404 So.2d 1066 (Fla. 3d DCA 1981). We need not, however, reach the question whether the ordinance is facially void. Enforcement of Section 19-195 may in some instances legitimately serve to preserve the architectural and aesthetic character of a neighborhood. But in this case, based in part on the candid testimony of the county's official, it is all too clear that enforcement of the ordinance against appellants serves only to exclude products or techniques used in factory-built housing. There is no showing of any local condition which justifies a requirement that bricks or stones be used to construct the exterior walls of residential housing, to the exclusion of walls constructed of steel studs and ribbed lath covered with three-fourths inch of stucco  an approved technique which is used by appellants.
Section 19-195 of the Monroe County Code is void as applied herein because by requiring that homes in a district zoned RU-1M be constructed of masonry to the roof line, with no showing of a relationship of that requirement to aesthetic uniformity or safety, the ordinance in effect discriminates against factory-built housing in violation of state statutes.
Reversed and remanded.
NOTES
[1] The challenged ordinance provides in pertinent part: § 19-195, RU-1M, single-family residential district (masonry construction)

(a) ... All Single-family dwellings constructed in this district shall be of masonry construction to the roof line where such residences are likely to preserve the character and appearance of the existing buildings or structures already present in the neighborhood and to provide a residential district classification of masonry construction only for those owners of presently undeveloped areas which wish to limit residential development on their land to masonry constructed residences for aesthetic or architectural reason...
(b) RU-1M zoning classification shall not be granted unless (l) or more of the following criteria is applicable:
(a) The property in question has a high percentage of masonry constructed residences so that the RU-1M classification will serve to preserve and enhance the character and appearance of the area.
(b) The property in question has a relatively small percentage of wood frame houses in proportion to the total residences existing.
(c) The property in question is not developed and the property owner or owners desire to restrict construction or residences on their land to masonry residences only.
(d) The subdivision or area in question has been only partially developed so that the RU-1M classification, if established thereon would establish the area as predominantly masonry construction. In all occasions under criteria (d), 50% of the property owners must consent or voice no objection to the RU-1M classification.
(e) The subdivision with single family residences of masonry construction where the RU-1M will prevent substantial depreciation in the property values in the neighborhood by preventing new structures that would be so at variance with either the exterior architectural appeal and functional plan of existing buildings so as to cause a substantial depreciation in the property values.
[2] RU-1 is the county's general zoning category for single-family residential housing. RU-1M is essentially identical except that it requires that all houses be constructed of masonry to the roof line.
[3] § 553.38(1) and (2), Fla. Stat. (1979) provides:

(1) The [State] [D]epartment [of Community Affairs] shall promulgate rules which protect the health, safety, and property of the people of this state by assuring that each manufactured building is structurally sound and properly installed on site and that plumbing, heating, electrical, and other systems thereof are reasonably safe, and which interpret and make specific the provisions of this part.
(2) The department shall enforce every provision of this part and the rules adopted pursuant hereto, except that local land use and zoning requirements, fire zones, building setback requirements, side and rear yard requirements, site development requirements, property line requirements, and subdivision control, as well as the review and regulation of architectural and aesthetic requirements, are specifically and entirely reserved to local authorities. Such local authorities must be reasonable and uniformly applied and enforced without any distinction as to whether such building is a conventionally constructed or manufactured building.... [e.s.]
[4] § 553.73(3)(a) and (b), Fla. Stat. (1979) provides:

(3) After January 1, 1978, local governments and state agencies with building construction regulation responsibilities may provide for more stringent requirements than those specified in the State Minimum Building Codes, provides:
(a) There is a determination by the local governing body of a need to strengthen the requirements of the State Minimum Building Codes adopted by such governing body, based upon demonstrations by the local governing body that local conditions justify more stringent requirements than those specified therein, for the protection of life and property; and
(b) Such additional requirements are not discriminatory against materials, products, or construction techniques of demonstrated capabilities.