The Honorable John M. DeGrove Secretary Department of Community Affairs 2571 Executive Center Circle, East Tallahassee, Florida 32301
Dear Secretary DeGrove:
This is in response to your request for an opinion on substantially the following question:
 DOES THE GOVERNING BODY OF A COUNTY HAVE THE AUTHORITY TO DECLARE A STATE OF EMERGENCY AND TO COMMANDEER PRIVATE PROPERTY TO COPE WITH SUCH AN EMERGENCY PURSUANT TO CH. 252, F.S.?
Your inquiry concerns the provisions of Ch. 252, F.S., the State Disaster Preparedness Act of 1974. Chapter 252 has been amended by Ch. 83-334, Laws of Florida, and renamed the State Emergency Management Act, see s 13, Ch. 83-334; however, the effective date of Ch. 83-334 is October 1, 1983. Therefore, in order to fully respond to your inquiry, it is necessary to consider the powers of a county under Ch. 252 before the effective date of Ch. 83-334 and
after such date.
Chapter 252, F.S., prescribes with particularity the powers and duties of state and local governments with regard to the occurrence of disasters or emergencies of unprecedented size and destructiveness resulting from enemy attack, sabotage or other hostile action or from natural or manmade causes. See, s 252.32, F.S. 1981, setting forth the purpose of the act. Pursuant to the act, the Governor has been granted specific powers and duties to implement the terms of the act, including, among other things, the authority to declare a state of disaster emergency. See, s252.36(2), F.S. 1981, which provides that the Governor shall declare a state of disaster by executive order or proclamation if he finds a disaster has occurred or that the occurrence or threat thereof is imminent. See also, s 252.36(3), F.S. 1981, stating that an executive order or proclamation of a state of disaster emergency shall `activate the disaster response and recovery aspects of the state, local, and interjurisdictional disaster emergency plans applicable to the political subdivision or area in question and be authority for the deployment and use of any forces to which the plan or plans apply . . . .' And see, s 252.36(5), F.S. 1981, setting forth additional powers of the Governor which include, among other things, the authority to commandeer or utilize any private property if he finds this necessary to cope with the disaster emergency.
Chapter 83-334, Laws of Florida, effective October 1, 1983, amends the foregoing statutory provisions, modifying certain terminology used therein to conform to the title and provisions of the act: the State Emergency Management Act. See, e.g., s 252.36(3), F.S., as amended by s 19, Ch. 83-334, Laws of Florida, which provides that an executive order or proclamation of a state of emergency
shall activate the emergency mitigation response and recovery aspects of the state, local and interjurisdictional emergencymanagement plans applicable to the political subdivision or area in question. And see, s 252.36(2), F.S., as amended, stating that `[a] state of emergency shall be declared by executive order or proclamation of the Governor if he finds an emergency has occurred or that the occurrence or threat thereof is imminent.' The authority of the Governor, however, to declare an emergency or to commandeer or utilize any private property he finds necessary to cope with the emergency remains substantially unchanged.
While political subdivisions of the state have been granted certain duties and responsibilities in order to provide effective and orderly governmental control and coordination of emergency operations, see, s 252.38, F.S., prior to October 1, 1983, the effective date of Ch. 83-334, no provision in Ch. 252 expressly authorizes counties to declare a local disaster emergency. Compare
Ch. 870, F.S., relating to affrays, riots, routs and unlawful assemblies, specifically s 870.042(1), F.S., which authorizes the sheriff, or such other county official having the duties of the sheriff, to declare that a state of emergency exists within the unincorporated areas of the county. Nor does it appear that such authority could be exercised under a county's `common law' powers. While counties have been granted certain home rule powers, see, s 1(f) and (g), Art. VIII, State Const., such powers are not unlimited. As provided by s 125.01(1), F.S., and s 1(f), Art. VIII, State Const., for noncharter counties and s 1(g), Art. VIII, State Const., for charter counties, a county may not act in conflict with, or when restricted by, general law or special law (if a charter county, such special law must be approved by vote of the electors of the county). Cf., City of Miami Beach v. Rocio Corp., 404 So.2d 1066 (Fla. 1981), per. for rev. den.,408 So.2d 1092 (Fla. 1981), wherein the court considered the extent of municipal home rule powers and stated that municipal ordinances are inferior to state law and must fail where a conflict exists. And see, Campbell v. Monroe County, 426 So.2d 1158, 1161
(3 D.C.A. Fla., 1983), citing the Rocio Corp. case and stating that a county ordinance may not conflict with any controlling provisions of a state statute and if any doubt exists, such doubt is to be resolved against the ordinance.
Thus, as Ch. 252, F.S. 1981, prescribes with such particularity that it is the Governor who shall declare an emergency and shall commandeer private property, this office cannot conclude that a county possesses such independent authority to declare a disaster emergency or to commandeer private property to cope with such an emergency prior to the effective date of Ch. 83-334 (October 1, 1983). Nor can this office conclude that the Governor has delegated the authority to commandeer or utilize private property to cope with a disaster emergency. See, AGO 78-167 wherein this office stated that while the Governor had been empowered to delegate such authority, such delegation must be effected prior to the disaster or threat thereof and must be given by executive order or proclamation and `the particular authority given in s252.36(5)(d), supra, would have to be expressly set forth in the executive order or proclamation.' (e.s.) While a question has apparently arisen as to whether Executive Order No. 80-29, Office of the Governor, State of Florida, constitutes such a delegation, I cannot conclude that the language of the executive order constitutes an express delegation by the Governor to the counties of the power to commandeer private property. Section 4 of the order provides in pertinent part:
 4. Political subdivisions of the state (counties) shall, and municipalities may, by interlocal agreement or otherwise, take pre-emergency action as prescribed in Chapter 252, including, but not limited to, the following:
 (f) Nothing contained in this order shall prevent local jurisdictions from taking prompt and necessary action to save lives and protect the property of their citizens, including the authority to compel and direct timely evacuation when necessary in the absence of the Governor's directive. (e.s.)
One of the discretionary powers conferred upon the Governor is to direct and compel the evacuation of all or part of the population from any stricken or threatened area if he deems such action necessary. See, s 252.36(5)(e), F.S. Section 4(f) of the executive order appears to delegate to local governments the authority to compel and direct timely evacuation when necessary in the absence of an executive order or directive of the Governor. However, the section does not purport to delegate to local governments the power to independently declare a local disaster emergency or to commandeer private property to be utilized in any such compulsory evacuation. Moreover, section 4 of Executive Order No. 80-29 merely provides generally for the political subdivisions to take pre-emergency action as prescribed in Ch. 252; subsections (a)-(e) of s 4 set forth the type of pre-emergency action which may be taken. While subsection (f) in general terms provides that the local governments are not precluded by the enumeration of activities set forth in the order from taking other necessary action to protect the lives and property of their citizens (a power ordinarily possessed by local governments ante-emergency), it does not specifically provide that such governmental entities may exercise the other powers expressly conferred upon the Governor by statute such as the power to commandeer private property.
Chapter 83-334, Laws of Florida, however, specifically amends the provisions relating to the powers of political subdivisions. Section 252.38(6)(e), F.S., as amended by s 21, Ch. 83-334, Laws of Florida, effective October 1, 1983, expressly states that each political subdivision has the power and authority:
 To request state assistance or invoke emergency-related mutual-aid assistance by declaring a state of local emergency in the event of an emergency affecting only one political subdivision. The duration of each state of emergency declared locally shall be limited to 7 days; it may be extended, as necessary, in 72-hour increments. Further, the political subdivision shall have the power and authority to waive the procedures and formalities otherwise required of the political subdivision by law pertaining to:
 1. Performance of public work and taking whatever prudent action is necessary to insure the health, safety, and welfare of the community. . . . (e.s.)
See, s 252.34(5), F.S. 1983, which defines `political subdivision to mean `any county or municipality created pursuant to law.' Thus, under the express terms of s 252.38(6)(e), as amended and effective October 1, 1983, a county may declare a limited state of emergency in the event of an emergency affecting only one political subdivision in order to request state assistance or to invoke emergency related mutual aid assistance.
Chapter 83-334, Laws of Florida (s 252.38(6)(e), F.S. 1983), however, in affirmatively granting political subdivisions the authority to declare a local state of emergency, does not expressly state that such governmental entities may exercise the powers of the Governor as prescribed in s 252.36, as amended, including the power to commandeer private property. While s252.38(6)(e) states that the political subdivision has the power to waive the procedures and formalities required of the political subdivision pertaining to taking whatever prudent action is necessary to insure the health, safety and welfare of the community, such provisions relate to those procedures required of the political subdivision and not the Governor. The power to waive `procedures and formalities' otherwise required of counties by law does not delegate or vest any substantive power in the governing bodies of the counties to seize and utilize private property in the course of an emergency. As previously stated, s 252.36
provides that it is the Governor who possesses the authority to commandeer or utilize any private property if he finds it necessary to cope with the emergency. While such emergency powers may be delegated by the Governor to a political subdivision, such delegation must be expressly set forth in an executive order or proclamation. See AGO-78-167. I cannot state that s 252.38(6)(e), as amended, which authorizes a county to waive certain procedures and formalities required of a county (but vests no substantive powers in the county), relates to or removes the requirements placed on the Governor by the provisions of Ch. 252.
Accordingly, I am of the view that prior to the effective date of Ch. 83-334, Laws of Florida, October 1, 1983, the governing body of a county does not have the authority to independently declare a local disaster emergency without a declaration of a disaster emergency by executive order or proclamation of the Governor or to commandeer private property absent an express prior delegation of such power by the Governor. As of October 1, 1983, however, the county is expressly authorized to request state assistance or to invoke emergency related mutual aid by declaring a state of local emergency in the event of an emergency affecting only one political subdivision. While a county, effective October 1, 1983, has the power to waive the procedures and formalities otherwise required of it by law pertaining to taking whatever prudent action is necessary to insure the health, safety and welfare of the community, this statute vests no substantive powers in the county and this office cannot state that such a provision authorizes, or constitutes a delegation of the Governor's power to, the county to commandeer private property.
Sincerely,
Jim Smith, Attorney General
Prepared by: Joslyn Wilson, Assistant Attorney General