The Honorable Doug "Tim" Jamerson Representative 255th District 904 The Tower 424 Central Avenue St. Petersburg, Florida 33701
Dear Representative Jamerson:
This is in response to your request for an Attorney General Opinion on substantially the following questions:
 1. ARE LOCAL GOVERNMENTAL BODIES AUTHORIZED UNDER EXISTING LAWS TO ENACT AND ENFORCE LOCAL ANTI-DISCRIMINATION ORDINANCES AND TO ENTER INTO DEFERRAL AGREEMENTS WITH THE U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION (E.E.O.C.)?
 2. WHAT DOES THE PHRASE "SUBSTANTIALLY IDENTICAL" MEAN AS IT IS USED IN s 760.10(11)(b), F.S.?
Since you specifically inquire as to the legislative intent regarding the subjects of your first question, I assume your request is an attempt to determine whether amendatory legislation is necessary to authorize local governments to enact and enforce anti-discrimination ordinances.
QUESTION ONE
Section 2(b), Art. VIII, State Const., states in pertinent part that
 Municipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law.
The "Municipal Home Rule Powers Act," Ch. 166, F.S., is a broad grant of power to municipalities in recognition and implementation of s 2(b), Art. VIII, State Const. See, City of Miami Beach v. Forte Towers, Inc., 305 So.2d 764 (Fla. 1974); State v. City of Sunrise, 354 So.2d 1206 (Fla. 1978). It provides, in s 166.021(1), F.S., that municipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services. Further, it enables them to exercise any power for municipal purposes, except when expressly prohibited by law.
As is stated in s 166.021(3), F.S., the legislative body of each municipality is empowered to enact legislation concerning any subject matter upon which the state Legislature may act except:
 (a) The subjects of annexation, merger, and exercise of extraterritorial power, which require general or special law pursuant to s. 2(c), Art. VIII of the State Constitution;
(b) Any subject expressly prohibited by the constitution;
 (c) Any subject expressly preempted to state or county government by the constitution or by general law; and
 (d) Any subject preempted to a county pursuant to a county charter adopted under the authority of ss. 1(g), 3, and 6(e), Art. VIII of the State Constitution.
An "express" reference is said to be one which is distinctly stated and not left to inference. Edwards v. State, 422 So.2d 84,85 (2 D.C.A.Fla., 1982); see also, AGO 84-58; 35 C.J.S. Expressly p. 342; Black's Law Dictionary 691, 692 (Rev. 4th ed., 1968).
No provision of general law or of the State Constitution of which I am aware or to which you have directed me expressly prohibits local governmental entities from enacting or enforcing anti-discrimination ordinances or entering into deferral agreements with the E.E.O.C.
With regard to preemption of this subject matter to state government, the Legislature has enacted the Human Rights Act of 1977 (ss 760.01-760.10, F.S.) which, inter alia, establishes the Florida Human Relations Commission. See, s 760.03, F.S. The powers of the commission, as set forth in s 760.06, F.S., include the power:
 To promote the creation of, and to provide continuing technical assistance to, local commissions on human relations and to cooperate with individuals and state, local, and other agencies, both public and private, including agencies of the Federal Government and of other states.
The language of this section clearly contemplates the existence of and action by local commissions on human relations. See also, s760.10(11)(a), F.S. ("In the event that any other agency of the state or of any other unit of government of the state has jurisdiction of the subject matter of any complaint filed with the commission and has legal authority to investigate or act upon the complaint, the commission may refer such complaint to such agency." [e.s.]; and s 760.10(11)(b), F.S. An examination of the provisions of Ch. 760, F.S., as amended by Ch. 84-117, Laws of Florida, does not reveal either an express or implied preemption of this subject matter to the Florida Commission on Human Relations. Cf., City of Miami Beach v. Rocio Corp., 404 So.2d 1066
(3 D.C.A.Fla., 1981), pet for rev. den., 408 So.2d 1092
(Fla. 1981).
While your inquiry does not refer to or provide the text of the anti-discrimination legislation of any particular local governmental entity, it should be noted that one impediment to the constitutionally derived legislative powers of municipalities occurs when the municipality enacts ordinances which conflict with state law. See, City of Miami Beach v. Rocio Corp., supra; West Palm Beach v. Board of City Commissioners of the City of West Palm Beach, 448 So.2d 1212, 1214-1215 (4 D.C.A.Fla., 1984). Municipal ordinances are inferior to state law and, to the extent of any conflict, must fail. See, Rinzler v. Carson, 262 So.2d 661
(Fla. 1972). As was stated by the Florida Supreme Court in the Rinzler case "[a] municipality cannot forbid what the legislature has expressly licensed, authorized or required, nor may it authorize what the legislature has expressly forbidden." Rinzler v. Carson, supra at 668.
The authority of a noncharter county to enact and enforce anti-discrimination ordinances and enter into deferral agreements with the E.E.O.C. is dependent upon the powers extended to such county by the Constitution and statutes of the state. Pursuant to s 1(f), Art. VIII, State Const.,
 Counties not operating under county charters shall have such power of self-government as is provided by general or special law. The board of county commissioners of a county not operating under a charter may enact, in a manner prescribed by general law, county ordinances not inconsistent with general or special law, but an ordinance in conflict with a municipal ordinance shall not be effective within the municipality to the extent of such conflict.
Chapter 125, F.S., implements the provisions of s 1(f), Art. VIII, State Const. The first sentence of s 125.01(1), F.S., grants to the governing body of a county the full power to carry on county government. Unless the Legislature has preempted a particular subject relating to county government by either general or special law, the county governing body, by reason of the first sentence of s 125.01, F.S., has full authority to act through the exercise of home rule power. See, Speer v. Olson, 367 So.2d 207 (Fla. 1978). I am not aware of, nor have you brought to my attention, any provision of general or special law which would prohibit a noncharter county from enacting or enforcing anti-discrimination legislation or entering into deferral agreements with the E.E.O.C. And see, s 125.01(1)(p), F.S., which authorizes noncharter county governments to "[e]nter into agreements with other governmental agencies within or outside the boundaries of the county for joint performance, or performance by one unit in [sic] behalf of the other, of any of either agency's authorized functions" ; s125.01(1)(t), F.S., stating that such governing body is empowered to "[a]dopt ordinances and resolutions necessary for the exercise of its powers . . ." and s 125.01(1)(w), F.S., authorizing noncharter county governments to "[p]erform any other acts not inconsistent with law which are in the common interest of the people of the county, and exercise all powers and privileges not specifically prohibited by law."
As discussed above, it does not appear that Ch. 760, F.S., as amended, constitutes a preemption of this subject matter to the Florida Commission on Human Relations. The discussion herein regarding the issue of conflict between municipal ordinances and state legislation is equally applicable to county ordinances. See, Campbell v. Monroe County, 426 So.2d 1158 (3 D.C.A.Fla., 1983); Board of County Commissioners of Marion County v. McKeever,436 So.2d 299 (5 D.C.A.Fla., 1983); accord: AGO's 83-59, 84-42, 84-51. Further, any determination of a conflict between the provisions of Ch. 760, F.S., as amended, and any particular local ordinance would be a matter for consideration on a case by case basis.
In sum, there does not appear to be any state constitutional or statutory impediment to the enactment or enforcement of anti-discrimination ordinances by local governmental bodies to the extent that such legislation does not conflict with the provisions of Ch. 760, F.S., nor does there appear to be any such prohibition against local governmental entities entering into deferral agreements with the E.E.O.C.
Under Title VII of the Civil Rights Act of 1964 (42 U.S.C.S. ss 2000e et seq., herein) a policy of cooperation by the E.E.O.C. is established with state and local agencies. In 42 U.S.C.S. s 2000e-8(b), it is stated in pertinent part that:
 The Commission may cooperate with State and local agencies charged with the administration of State fair employment practices laws and, with the consent of such agencies, may, for the purpose of carrying out its functions and duties under this title [42 U.S.C.S ss 2000e et seq.] and within the limitation of funds appropriated specifically for such purpose, engage in and contribute to the cost of research and other projects of mutual interest undertaken by such agencies, and utilize the services of such agencies and their employees, and, notwithstanding any other provision of law, pay by advance or reimbursement such agencies and their employees for services rendered to assist the Commission in carrying out this title [42 U.S.C.S ss 2000e et seq.]. In furtherance of such cooperative efforts, the Commission may enter into written agreements with such State or local agencies and such agreements may include provisions under which the Commission shall refrain from processing a charge in any cases or class of cases specified in such agreements or under which the Commission shall relieve any person or class of persons in such State or locality from requirements imposed under this section.
The provisions of the Federal Civil Rights Act regarding deferrals to state and local agencies of allegations of discrimination, state that
 (i) In order to give full weight to the policy of section 706(c) of the Act, which affords State and local fair employment practice agencies that come within the provisions of that section an opportunity to remedy alleged discrimination concurrently regulated by Title VII and State or local law, the Commission adopts the following procedures with respect to allegations of discrimination filed with the Commission. It is the intent of the Commission to thereby encourage the maximum degree of effectiveness in the State and local agencies. The Commission shall endeavor to maintain close communication with the State and local agencies with respect to all matters forwarded to such agencies and shall provide such assistance to State and local agencies as is permitted by law and as is practicable. (ii) Section 706(c) of Title VII grants States and their political subdivisions the exclusive right to process allegations of discrimination filed by a person other than a Commissioner for a period of 60 days (or 120 days during the first year after the effective date of the qualifying State or local law). This right exists where, as set forth in s 1601.70, a State or local law prohibits the employment practice alleged to be unlawful and a State or local agency has been authorized to grant or seek relief. After the expiration of the exclusive processing period, the Commission may commence processing the allegation of discrimination.
29 C.F.R. s 1601.13(4)(i)-(ii). And see, 29 C.F.R. Subpart H, for 706 agency designation procedures including s 1601.70(a) which states that among the qualifications a state or local agency must possess for designation as a 706 agency aRE: "(1) That the State or political subdivision has a fair employment practice law which makes unlawful employment practices based upon race, color, religion, sex or national origin; and (2) That the State or political subdivision has either established a State or local authority or authorized an existing State or local authority that is empowered with respect to employment practices found to be unlawful, to do one of three things: To grant relief from the practice; to seek relief from the practice; or to institute criminal proceedings with respect to the practice." In instances in which both State and local 706 agencies exist, the E.E.O.C. reserves the right to defer to the state agency only. However, where agencies with concurrent jurisdiction exist, the E.E.O.C. may defer to the 706 agency which would best serve the purposes of the act or to both. See, 29 C.F.R. s 1601.70(4)(d).
The federal legislative provisions of Title VII of the Civil Rights Act of 1964 and regulations promulgated thereunder clearly contemplate the possible existence of both state and local fair employment practice laws and authorize the E.E.O.C. to enter into deferral agreements with either governmental entity as the commission determines would best serve the purposes of the act.
Further, specific language of the federal act specifically provides that the federal legislation shall not operate to the exclusion of other legislation on this subject matter:
 Nothing contained in any title of this Act shall be construed as indicating an intent on the part of Congress to occupy the field in which any such title operates to the exclusion of State laws on the same subject matter, nor shall any provision of this Act be construed as invalidating any provision of State law unless such provision is inconsistent with any of the purposes of this Act, or any provision thereof.
42 U.S.C.S. s 2000h-4.
In sum, it is my opinion that local governmental bodies are empowered to enact and enforce local anti-discrimination ordinances to the extent that such legislation does not conflict with state statutes and that such local governmental entities possess the authority to enter into deferral agreements with the U.S. Equal Employment Opportunity Commission.
QUESTION TWO
Your second question refers to terminology contained in s760.10(11)(b), F.S. This section provides that
 If any such agency has legal authority to investigate such a complaint and to provide relief substantially identical to that available under this section, the commission may provide by rule, in accordance with criteria established by rule, that all such complaints shall be deferred to such agency. In the event that such agency, within 20 days of deferral of such a complaint, gives notice to the commission that the agency accepts jurisdiction of the complaint, the commission shall cease to have jurisdiction of the complaint. (e.s.)
There is no definition of the phrase "substantially identical" as used in Ch. 760, F.S.
It is the general rule that words in common use in a statute are to be construed in their plain and ordinary signification unless they are used in a technical sense. See, State ex rel. Hanbury v. Tunnicliff, 124 So. 279 (Fla. 1929); Gasson v. Gay, 49 So.2d 525
(Fla. 1950); State v. Egan, 287 So.2d 1 (Fla. 1973). LSee also, Pedersen v. Green, 105 So.2d 1 (Fla. 1958), "[w]ords of common usage, when used in a statute, should be construed in their plain and ordinary sense." "Substantial" is defined as "1b: not seeming or imaginary: not illusive: real, true 2c: considerable in amount, value, or worth . . . 4a: being that specified to a large degree or in the main . . . ." Webster's Third New International Dictionary 2280 (unabridged ed. 1966).
It would appear that the phrase "substantially identical" as contained in s 760.10(11)(b), F.S., means relief that is identical in a considerable amount or identical to that provided under s760.10, F.S., to a large degree.
In sum, it is my opinion that local governmental entities, both municipal and county, possess the constitutional and statutory authority to enact and enforce local anti-discrimination ordinances to the extent that such legislation does not conflict with state statutes and that such local governmental bodies are similarly authorized to enter into deferral agreements with the U.S. Equal Employment Opportunity Commission. In addition, it is my opinion that the phrase "substantially identical" as used in s760.10(11)(b), F.S., means identical to a considerable degree or identical to a large extent.
Sincerely,
Jim Smith Attorney General
Prepared by:
Gerry Hammond Assistant Attorney General