Mr. Warren O. Tiller County Attorney Volusia County Post Office Box 429 DeLand, Florida 32720
Dear Mr. Tiller:
This is in response to your request for an opinion on substantially the following questions:
 1. MAY A LOCAL GOVERNMENT EXCLUDE FACTORY-BUILT HOUSING WHICH IS CONSTRUCTED TO THE STANDARDS OF PART IV OF CH. 553, F.S., FROM A ZONING CLASSIFICATION THAT PERMITS CONVENTIONALLY CONSTRUCTED HOUSING?
 2. IF THE ANSWER TO QUESTION ONE IS IN THE NEGATIVE, MAY A LOCAL GOVERNMENT IMPOSE ADDITIONAL CONSTRUCTION STANDARDS FOR AESTHETIC PURPOSES APPLICABLE TO BOTH CONVENTIONAL AND MANUFACTURED HOUSING?
QUESTION ONE
Part IV of Ch. 553, F.S., is known as the "Florida Manufactured Building Act of 1979." Section 553.35, F.S. Subsection (11) of s.553.36, F.S., defines a "[m]anufactured building" to mean
 a closed structure, building assembly, or system of subassemblies, which may include structural, electrical, plumbing, heating, ventilating, or other service systems manufactured in manufacturing facilities for installation or erection, with or without other specified components, as a finished building or as part of a finished building, which shall include, but not be limited to, residential, commercial, institutional, storage, and industrial structures. This part does not apply to mobile homes. Manufactured building may also mean, at the option of the manufacturer, any building of open construction made or assembled in manufacturing facilities away from the building site for installation, or assembly and installation, on the building site.
The Department of Community Affairs is vested with the authority and duty and responsibility to administer the provisions of Part IV of Ch. 553. Section 553.37, F.S. In carrying out the administration of the manufactured building act, the department is vested with the authority and responsibility to promulgate rules which will assure "that each manufactured building is structurally sound and properly installed on site and that plumbing, heating, electrical, and other systems thereof are reasonably safe. . . ." Section 553.38(1).
An examination of Part IV of Ch. 553 reveals that the Act constitutes a state preemption of standards and requirements for manufacture of factory-built housing in the State of Florida. The Department of Community Affairs is vested with the authority to promulgate rules, enter into contracts, and do such things as may be necessary and incidental to the administration of the manufactured building act, and to issue an insignia of approval for all manufactured building in compliance with the department's requirements promulgated under Part IV of Ch. 553. Section553.37(1) and (2), F.S. Subsection (3) of s. 553.37 provides that "[a]ll manufactured buildings issued and bearing insignia of approval pursuant to subsection (2) shall be deemed to comply with the requirements of all ordinances or rules enacted by any local government which governs construction." And see, AGO 73-107, in which this office opined that a local governmental entity which enacts an electrical code which differs from the electrical code adopted by the Department of Community Affairs for factory-built housing pursuant to s. 553.38(1) may not require additional approval of factory-built housing units bearing the department's insignia of approval which are subsequently sold or installed within the entity's jurisdiction.
Directly responsive to your inquiry, s. 553.38(2), F.S., in pertinent part, provides:
 The department shall enforce every provision of this part and the rules adopted pursuant hereto, except that local land use and zoning requirements, fire zones, building setback requirements, side and rear yard requirements, site development requirements, property line requirements, subdivision control, and onsite installation requirements, as well as the review and regulation of architectural and aesthetic requirements, are specifically and entirely reserved to local authorities. Such local requirements and rules which may be enacted by local authorities must be reasonable and uniformly applied and enforced without any distinction as to whether a building is a conventionally constructed or manufactured building. (e.s.)
This provision expressly forbids a zoning ordinance which discriminates against manufactured buildings. In Campbell v. Monroe County, 426 So.2d 1158 (3 D.C.A.Fla., 1983), the district court of appeal reviewed a county zoning ordinance which effectively excluded factory-built housing from the particular zoning classification. The zoned area in question required masonry construction for all new housing which is not used in the construction of the manufactured houses. The court, while acknowledging the fact that the law reserves to local governments the authority to enforce zoning requirements that regulate aesthetic appearances, stated at 1161 that an ordinance cannot conflict with state law, "and if any doubt exists, doubt is to be resolved against the ordinance in favor of the statute." Citing Retail Credit Company v. Dade County, Florida, 393 F. Supp. 577
(S.D.Fla. 1975) (ordinance must not conflict with controlling provisions of general law); Rinzler v. Carson, 262 So.2d 661
(Fla. 1972); City of Miami Beach v. Rocio Corporation,404 So.2d 1066 (3 D.C.A.Fla., 1981), the court concluded that the ordinance in question served only to exclude products or techniques used in factory-built housing with no showing that such requirements bore a relationship to aesthetic uniformity or safety, and that therefore the ordinance was void because it in effect discriminated against factory-built housing in violation of state statutes.
Based upon the statutory language contained in s. 553.38(2), F.S., and the holding in Campbell v. Monroe County, supra, I am therefore of the opinion that a local government may not exclude manufactured housing, built to the standards required by the Department of Community Affairs under Part IV of Ch. 553, F.S., from a zoning classification that permits conventionally constructed housing.
QUESTION TWO
Section 553.38(2), F.S., as set forth above, expressly provides "that local land use and zoning requirements, . . . as well as the review and regulation of architectural and aesthetic requirements, are specifically and entirely reserved to local authorities." (e.s.) This provision clearly permits local governments to regulate aesthetic matters. However, the case of Campbell v. Monroe County, supra, discussed in Question One, is also applicable to your second question. The ordinance in the Campbell case required that in certain residential zones, exterior masonry walls be constructed on new housing for aesthetic purposes. However, the court found that, based in part on the testimony of the county's building official, enforcement of the ordinance served only to exclude products or techniques used in factory-built housing. The court at 1161 stated:
 There is no showing of any local condition which justifies a requirement that bricks or stones be used to construct the exterior walls of residential housing, to the exclusion of walls constructed of steel studs and ribbed lath covered with three-fourths inch of stucco — an approved technique which is used by appellants.
The appellants elicited testimony from the county building official that the different construction techniques were not visually distinguishable. The court held that the ordinance was
 void as applied herein because by requiring that homes in a district zoned RU-1M be constructed of masonry to the roof line, with no showing of a relationship of that requirement to aesthetic uniformity or safety, the ordinance in effect discriminates against factory-built housing in violation of state statutes. (emphasis in original)
426 So.2d at 1161. Thus, local regulations having no relationship to aesthetic uniformity or safety which in effect discriminate against factory-built housing are in conflict with and violate s.553.38(2), F.S. Regulation of architectural and aesthetic requirements cannot be used as a subterfuge to effectively zone-out manufactured buildings.
In conclusion, I am of the following opinion:
 1. Local government cannot exclude manufactured housing constructed to the standards required by the Department of Community Affairs under Part IV of Ch. 553, F.S., from a zoning classification that permits conventionally constructed housing.
 2. Local aesthetic regulations may be uniformly applied and enforced without any distinction as to whether a building is conventionally constructed or manufactured, but such regulations must be reasonable and bear a relationship to aesthetic uniformity or safety.
Sincerely,
Robert A. Butterworth Attorney General
Prepared by:
Craig Willis Assistant Attorney General