Mr. Gordon B. Johnston Marion County Attorney 601 Southeast 25th Avenue Ocala, Florida 34471
Dear Mr. Johnston:
On behalf of the Board of County Commissioners of Marion County, Florida, you ask for my opinion on substantially the following questions:
1. Is a noncharter county authorized to enact an ordinance which imposes upon homeowners' associations operating under Chapter 720, Florida Statutes, more stringent or additional financial reporting requirements than those contained in section 720.303(7), Florida Statutes?
2. If a county is authorized to impose additional or more stringent financial reporting requirements on a homeowners' association, is it also authorized to impose a fine or other civil penalty for failure to comply with those requirements?
In sum:
1. A noncharter county is not authorized to adopt an ordinance imposing more stringent or additional financial reporting requirements on homeowners' associations operating under Chapter 720, Florida Statutes.
2. In light of my answer to Question One, no response to your second question is necessary.
Marion County is a noncharter county and is contemplating enacting local legislation regulating homeowners' associations operating pursuant to Chapter 720, Florida Statutes.
Question One
Your first question deals with the authority of noncharter counties in this state to enact local legislation on a topic which is the subject of state legislation. Among the possible provisions for inclusion in such an ordinance is a requirement that copies of Homeowners' Associations' financial reports be filed with the office of the Clerk of Circuit Court.
Chapter 125, Florida Statutes, implements the provisions of Article VIII, section 1(f), of the Florida Constitution, which gives noncharter counties, such as Marion County, such powers of self-government as are provided by general or special law. This constitutional provision also authorizes the board of county commissioners of such a county to enact ordinances in the manner prescribed by Chapter 125, Florida Statutes, which are not inconsistent with general law.[1]
As the Florida Supreme Court noted in Speer v. Olson,[2] an early case delineating the authority of counties under the 1968 constitution and statutes adopted to effectuate that authority:
"The first sentence of Section 125.01(1), Florida Statutes, (1975), grants to the governing body of a county the full power to carry on county government. Unless the Legislature has pre-empted a particular subject relating to county government by either general or special law, the county governing body, by reason of this sentence, has full authority to act through the exercise of home rule power."[3]
This language from Speer v. Olson, was quoted extensively in a case involving the power of Marion County to impose a millage cap on ad valorem taxes. In Board of County Commissioners of MarionCounty v. McKeever,[4] the court determined that a county ordinance was invalid because it conflicted with the state statutory scheme. The court recognized that an "ordinance is inconsistent or conflicts with general law if the ordinance and the legislative provision cannot co-exist." The court noted that Chapter 129, Florida Statutes, establishes a budget system for county governments and mandates that the county commission prepare, approve, adopt and exercise "for each fiscal year" an annual budget "for such funds as may be required by law or by sound financial practices and generally accepted accounting principles."[5] The court recognized that the statutory scheme was a comprehensive one requiring the annual preparation and adoption of a budget and the fixing of millage rates. Thus, the Marion County ordinance was determined to be in conflict with the statutes and therefore unconstitutional.
In Campbell v. Monroe County,[6] the district court of appeal struck down a county ordinance as conflicting with state statutes adopted to prohibit discrimination against manufactured housing. While the court recognized that a Florida county is authorized to enforce zoning requirements which primarily regulate aesthetic appearances within residential areas, the court found the local ordinance violative of a state statute requiring that such regulations be enforced "without any distinction as to whether such building is a conventionally constructed or manufactured building[.]"[7] The court noted:
"An ordinance must not conflict with any controlling provisions of a state statute and if any doubt exists, doubt is to be resolved against the ordinance in favor of the statute."[8]
Thus, while counties have broad powers of self-government, they may not adopt local legislation which conflicts with state law or on a subject which has been preempted to state regulation.
The legislative purpose for adoption of Chapter 720, Florida Statutes, is expressed in section 720.302, as a desire
"to give statutory recognition to corporations that operate residential communities in this state, to provide procedures for operating homeowners' associations, and to protect the rights of association members without unduly impairing the ability of such associations to perform their functions."[9]
In addition, the Legislature recognized that
"[I]t is not in the best interest of homeowners' associations or the individual association members thereof to create or impose a bureau or other agency of state government to regulate the affairs of homeowners' associations. Further, the Legislature recognizes that certain contract rights have been created for the benefit of homeowners' associations and members thereof before the effective date of this act and that ss. 720.301 — 720.312 are not intended to impair such contract rights, including, but not limited to, the rights of the developer to complete the community as initially contemplated."[10]
Clearly, the Legislature has expressed its concern that homeowners' associations operate with minimal governmental oversight and that any such governmental regulation not constitute an unconstitutional impairment of contract.[11] Further evidence of this intent may be found in section 720.303(1), Florida Statutes, describing the powers and duties of homeowners' associations and stating that "[t]he powers and duties of an association include those set forth in this chapter and, except as expressly limited or restricted in this chapter, those set forth in the governing documents."
The statutory scheme contained in Chapter 720, Florida Statutes, is comprehensive. Among the provisions of this chapter are regulations establishing the powers and duties of homeowners' associations, the official records of the association, and budgets and financial reporting;[12] the right of owners to peaceably assemble;[13] the obligations of members, remedies at law or in equity, the levying of fines and the suspension of use rights;[14]
the procedures to be used in homeowners' association meetings and elections;[15] prohibited clauses in association documents;[16]
and a procedure for dispute resolution.[17]
Section 720.303(5), Florida Statutes, makes provision for the inspection and copying of official records of the homeowners' association. That statutory section establishes how and where the official records of the association are to be maintained and sets out a schedule for determining and assessing damages for the denial of access to official records. The statute also authorizes the association to adopt written rules regarding inspection of records and the fees which may be imposed for copying such records.
With regard to financial reporting, section 720.303(7), Florida Statutes, states:
"The association shall prepare an annual financial report within 60 days after the close of the fiscal year. The association shall, within the time limits set forth in subsection (5), provide each member with a copy of the annual financial report or a written notice that a copy of the financial report is available upon request at no charge to the member. The financial report must consist of either:
(a) Financial statements presented in conformity with generally accepted accounting principles; or
(b) A financial report of actual receipts and expenditures, cash basis, which report must show:
1. The amount of receipts and expenditures by classification; and
2. The beginning and ending cash balances of the association."
This statutory scheme is comprehensive and strikes a balance between protecting the interest of members of the homeowners' association and the legislative concern for minimal governmental regulation and recognition of vested contractual rights.
Thus, it is my opinion that a noncharter county may not enact an ordinance which imposes additional or more stringent financial reporting requirements on homeowners' associations operating under Chapter 720, Florida Statutes, as the governmental regulation of these associations has been preempted by the Legislature.
Finally, I note that you have specifically mentioned the possibility of adopting an ordinance requiring that copies of homeowners' association financial reports be filed with the clerk of circuit court. This office has stated that the clerk of court may not accept for recording in the official records any document which the law does not authorize or require him or her to record. In Attorney General's Opinion 90-69, this office considered whether the clerk of court must record documents not identified in section 28.222, Florida Statutes, such as living wills, child custody agreements between parties without court approval, foreign state birth certificates, foreign country birth certificates and documents in a foreign language without an English translation. The opinion focused on the limitation upon the authority of the clerk to perform only those duties authorized by law and recognized the statutory mandate that the clerk record "all instruments that he or she may be required or authorized by law to record in the county where he or she is clerk.[18] Based on these considerations, this office concluded that the clerk is not authorized to record any document or instrument which is not specifically required or authorized to be recorded by section28.222, Florida Statutes, or by law.[19]
Question Two
In light of the answer to Question One, no response to this question is necessary.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgh
[1] Section 125.01(1), Fla. Stat.
[2] 367 So.2d 207 (Fla. 1978).
[3] Id. at 211.
[4] 436 So.2d 299 (Fla. 5th DCA 1983).
[5] Section 129.01(1), Fla. Stat.
[6] 426 So.2d 1158 (Fla. 3d DCA 1983).
[7] Citing, s. 553.38(2), Fla. Stat. (1979).
[8] 426 So.2d at 1161.
[9] Section 720.302(1), Fla. Stat.
[10] Section 720.302(2), Fla. Stat. And see, s. 720.302(3), Fla. Stat., providing that ss. 720.301-720.312, Fla. Stat., do not apply to:
"(a) A community that is composed of property primarily intended for commercial, industrial, or other nonresidential use; or
(b) The commercial or industrial parcels in a community that contains both residential parcels and parcels intended for commercial or industrial use."
Further, these sections do not apply to "any association that is subject to regulation under chapter 718, chapter 719, or chapter 721; or to any nonmandatory association formed under chapter 723." Section 720.302(4), Fla. Stat.
[11] See, Art. I, s. 10, Fla. Const., stating that "[n]o bill . . . impairing the obligation of contracts shall be passed."
[12] Section 720.303, Fla. Stat.
[13] Section 720.304, Fla. Stat.
[14] Section 720.305, Fla. Stat.
[15] Section 720.306, Fla. Stat.
[16] Section 720.3075, Fla. Stat.
[17] Section 720.311, Fla. Stat.
[18] Section 28.222(1), Fla. Stat.
[19] And see, Ops. Att'y Gen. Fla. 98-65 (1998) (clerk may record only that portion of record of marriage constituting a marriage license), 92-24 (1992) (clerk may not accept and record death certificates into official records).