Dear Ms. Lee:
On behalf of the Board of County Commissioners and the Hillsborough County Sheriff's Office, you have asked for my opinion on substantially the following question:
Is Hillsborough County authorized to enact an ordinance imposing additional restrictions on secondary metals recyclers who are currently regulated under Part II, Chapter 538, Florida Statutes, or do those statutory provisions preempt this area of regulation to the state?
In sum:
Hillsborough County is authorized by section 538.17, Florida Statutes, to adopt more restrictive local regulations for secondary metals recyclers than those set forth in Part II, Chapter 538, Florida Statutes.
According to your letter and that submitted on behalf of the Sheriff of Hillsborough County, there is a question whether the provisions of Part II, Chapter 538, Florida Statutes, preempt local regulation of secondary metals recyclers. The type of local regulation being considered would mandate that secondary metals recyclers located within Hillsborough County maintain that data required by section 538.19, Florida Statutes, in a uniform electronic format. While this office does not comment on the specific terms of local legislation, the issue of preemption is a constitutional and statutory one and my general comments addressing preemption follow.
Hillsborough County operates under a constitutional home rule charter as provided in section 24, Article VIII of the Florida Constitution of 1885.[1] Section 1(g), Article VIII, Florida Constitution, provides:
"Charter government. Counties operating under county charters shall have all powers of local self-government not inconsistent with general law, or with special law approved by vote of the electors. The governing body of a county operating under a charter may enact county ordinances not inconsistent with general law."
Thus, charter counties have a direct constitutional grant of broad powers of self-government, which include the power of county citizens to enable their county to enact regulations of county-wide effect. However, while charter counties possess extensive powers of self-government, legislation by such counties may not be inconsistent with provisions of general law.[2] In Jordan ChapelFreewill Baptist Church v. Dade County, [3] the court discussed whether a Dade County ordinance conflicted with state law. According to the court:
"Legislative provisions are inconsistent if, in order to comply with one provision, a violation of the other is required. . . . [T]he sole test of conflict for purposes of preemption is theimpossibility of co-existence of the two laws. Courts are therefore concerned with whether compliance with a County ordinance requires a violation of a state statute or renders compliance with a state statute impossible."[4] (emphasis in original)
In Campbell v. Monroe County, [5] the district court of appeal struck down a county ordinance as conflicting with state statutes adopted to prohibit discrimination against manufactured housing. While the court recognized that a Florida county is authorized to enforce zoning requirements which primarily regulate aesthetic appearances within residential areas, the court found the local ordinance violative of a state statute requiring that such regulations be enforced "without any distinction as to whether such building is a conventionally constructed or manufactured building[.]"[6] The court noted:
"An ordinance must not conflict with any controlling provisions of a state statute and if any doubt exists, doubt is to be resolved against the ordinance in favor of the statute."[7]
Thus, while counties have broad powers of self-government, they may not adopt local legislation which conflicts with state law or on a subject which has been preempted to state regulation.
Nothing in Chapter 538, Florida Statutes, indicates that the Legislature intended to preempt the field of regulation of secondary metals recyclers.[8] Rather, section 538.17, Florida Statutes, specifically provides:
"Nothing in this chapter shall preclude political subdivisions of the state and municipalities from enacting laws more restrictive than the provisions of this chapter."
While this language appears in Part I, Chapter 538, Florida Statutes, dealing with secondhand dealers, the language of the section relates to "this chapter." Part II of Chapter 538, Florida Statutes, regulates secondary metals recyclers specifically, but again, the language used by the Legislature clearly contemplates local regulation of all topics controlled by Chapter 538, Florida Statutes.
This conclusion is supported by the legislative history surrounding the enactment of Chapter 89-533, Laws of Florida, which created Chapter 538. The Final Staff Analysis and Economic Impact Statement for Senate Bill 16-B which became Chapter 538, Florida Statutes (1989), notes that "[t]he bill would not prohibit local regulation of second-hand dealers or secondary metalrecyclers."[9] (e.s.) The cardinal rule of statutory construction is that a statute should be construed so as to ascertain and give effect to the intention of the Legislature as expressed in the statute. Resort is first had to the language of the statute itself; however, when the language itself is unclear, the legislative history may be consulted for the purpose of determining the legislative intent.[10]
The Legislature did not intend by enacting Part II, Chapter 538, Florida Statutes, or by placing section 538.17, Florida Statutes, in the first section of that chapter, to preempt the field of local regulation of secondary metals recyclers. Rather, the authority of local governments to regulate in this area was the expressed intention of the Legislature.
In sum, it is my opinion that Hillsborough County is subject to the terms of Chapter 538, Florida Statutes, but that to the extent such legislation is not inconsistent with these general statutory provisions, a charter county such as Hillsborough County may legislate in the area of regulation of secondary metals recyclers.
Sincerely,
Bill McCollum Attorney General
BM/tgh
[1] Cf. Art. VIII, s. 24, 1885 Fla. Const., authorizing the electors of Hillsborough County to adopt a charter form of government; and Art. VIII, s. 6(e), 1968 Fla. Const., stating, among other things, that Art. VIII, s. 24, 1885 Fla. Const., shall remain in full force and effect until that county shall expressly adopt a charter or home rule plan.
[2] See Ops. Att'y Gen. Fla. 90-01 (1990), 86-62 (1986), 81-07(1981), and 79-109 (1979), which discuss the authority of charter counties to enact ordinances not inconsistent with general law. And see Campbell v. Monroe County,426 So. 2d 1158, 1161 (Fla. 3d DCA 1983), stating that a county ordinance may not conflict with any controlling provisions of a state statute and if any doubt exists, such doubt is to be resolved against the ordinance. And see Art. VIII, s. 1(g), Fla. Const., and D'Alemberte Commentary, 26A Fla. Stat. Ann. 155, 157 (West 1995) ("This entirely new subsection provides for the broadest extent of county self-government or `home rule' as it is commonly described . . . the power which may be granted to county governments under a charter is the power to have county ordinances take precedence over municipal ordinances.").
[3] 334 So. 2d 661 (Fla. 3d DCA 1976).
[4] Id. at 664.
[5] 426 So. 2d 1158 (Fla. 3d DCA 1983).
[6] Citing s. 553.38(2), Fla. Stat. (1979).
[7] 426 So. 2d at 1161.
[8] Compare ss. 383.309(2), Fla. Stat., "[i]t is the intent of the Legislature to preempt that function [adoption of rules governing the design, construction, erection, alteration, modification, repair, or demolition of birth centers] to the Florida Building Commission and the State Fire Marshal through adoption and maintenance of the Florida Building Code and the Florida Fire Prevention Code"; 395.1055(8), Fla. Stat., "[i]t is the intent of the Legislature to preempt that function [adopt any rule governing the design, construction, erection, alteration, modification, repair, or demolition of any public or private hospital, intermediate residential treatment facility, or ambulatory surgical center] to the Florida Building Commission and the State Fire Marshal through adoption and maintenance of the Florida Building Code and the Florida Fire Prevention Code;" 403.415(2)(b), Fla. Stat., providing for the preemption of federal regulations over state standards for truck noise; and 482.242(1), "[t]he provisions of this chapter preempt to the state all regulation of the activities and operations of pest control services[.]"
[9] See p. 3, s. B., House of Representatives Committee on Criminal Justice Final Staff Analysis Economic Impact Statement on SB 16-B dated June 22, 1989; and p. 4, s. C., Section-By-Section Analysis, providing that the bill "allows for local regulation[.]"
[10] Reeves v. State, 957 So. 2d 625 (Fla. 2007), cert.denied., 128 S.Ct. 537, 169 L.Ed.2d 377, 76 USLW 3239 (2007);City of St. Petersburg v. Siebold, 48 So. 2d 291 (Fla. 1950); and People's Bank of Jacksonville v. Arbuckle,90 So. 458 (Fla. 1921).