Dear Mr. Cuevas:
On behalf of the Miami-Dade County Commission, you ask substantially the following:
Does Chapter 723, Florida Statutes, preempt the county's adoption of ordinances requiring a review of the two years preceding the application for rezoning or redevelopment of a mobile home park to determine whether adequate alternative mobile home space is or was available for displaced mobile home owners or that it is shown that the park residents vacated without duress, coercion, or have found alternative suitable housing?
In sum:
A county may not adopt an ordinance imposing additional conditions to the vacation of a mobile home park where the owner has followed the mandates of Chapter 723, Florida Statutes, which preempts local regulation or control of mobile home parks.
Your question arises in light of the scenario that a mobile home park owner empties the park, consistent with the statutory requirements for vacating mobile home parks in Chapter 723, Florida Statutes, before applying for rezoning or redevelopment with the county.
Chapter 723, Florida Statutes, generally governs mobile home park tenancies in which a mobile home is placed upon a rented or leased lot in a mobile home park in which ten or more lots are offered for rent or lease.[1] The Legislature has recognized that once a mobile home tenancy has commenced, unique factors can affect the bargaining position of the mobile home owner and the mobile home park owner and has found that protection of the property rights of mobile home owners in a mobile home park as well as the business interests and property rights of the mobile home park owner is required.[2] Section 723.004(2), Florida Statutes, states:
"There is hereby expressly preempted to the state all regulation and control of mobile home lot rents in mobile home parks andall those other matters and things relating to the landlord-tenantrelationship treated by or falling within the purview of thischapter. Every unit of local government is prohibited from taking any action, including the enacting of any law, rule, regulation, or ordinance, with respect to the matters and things hereby preempted to the state." (e.s.)
Moreover, the statute provides an express declaration that "the relationship between landlord and tenant as treated by or falling within the purview of this chapter is a matter reserved to the state and that units of local government are lacking in jurisdiction and authority in regard thereto."[3]
Section 723.083, Florida Statutes, states:
"No agency of municipal, local, county, or state government shall approve any application for rezoning, or take any other official action, which would result in the removal or relocation of mobile home owners residing in a mobile home park without first determining that adequate mobile home parks or other suitable facilities exist for the relocation of the mobile home owners."
The plain language of section 723.083, Florida Statutes, requires an agency with zoning authority to make a determination that adequate facilities exist for the relocation of mobile home owners before approving any application for rezoning or taking any official action resulting in the removal or relocation of mobile home owners. Thus, it would appear that the local government's ability to make a determination of adequate facilities for displaced owners is tied to any action that would precipitate or result in the removal or relocation of mobile home owners, rather than action taken after such owners have been removed or relocated pursuant to the provisions in Chapter 723, Florida Statutes.[4]
As previously recognized by this office, there are several provisions in Chapter 723, Florida Statutes, which provide notice and safeguards to mobile home owners who may be subject to removal and relocation due to a change of use of the mobile home park land.[5] Section 723.061(1)(d), Florida Statutes, allows a mobile home park owner to evict a mobile home owner, a mobile home tenant, a mobile home occupant, or a mobile home for:
"Change in use of the land comprising the mobile home park, or the portion thereof from which mobile homes are to be evicted, from mobile home lot rentals to some other use, provided all tenants affected are given at least 6 months' notice of the projected change of use and of their need to secure other accommodations. The notice shall include in a font no smaller than the body of the notice: YOU MAY BE ENTITLED TO COMPENSATION FROM THE FLORIDA MOBILE HOME RELOCATION TRUST FUND, ADMINISTERED BY THE FLORIDA MOBILE HOME RELOCATION CORPORATION (FMHRC). FMHRC CONTACT INFORMATION IS AVAILABLE FROM THE FLORIDA DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION. The park owner may not give a notice of increase in lot rental amount within 90 days before giving notice of a change in use."
Mobile home owners may object to a change of use by petitioning for administrative or judicial remedies within 90 days of receiving notice or they will be barred from taking any subsequent action to contest the change in use; however, this does not prevent a homeowner from objecting to a zoning change at any time.[6] Section 723.061(4), Florida Statutes, further requires:
"A mobile home park owner applying for the removal of a mobile home owner, tenant, occupant, or a mobile home shall file, in the county court in the county where the mobile home lot is situated, a complaint describing the lot and stating the facts that authorize the removal of the mobile home owner, tenant, occupant, or the mobile home. The park owner is entitled to the summary procedure provided in s. 51.011, and the court shall advance the cause on the calendar."
Section 723.0611, Florida Statutes, creates the Florida Mobile Home Relocation Corporation (FMHRC) which has the primary purpose to make payments to mobile home owners under the relocation program established in Chapter 723, Florida Statutes.[7] If a mobile home owner is required to move due to a change in use of the land comprising the park as provided in section 723.061(1)(d), Florida Statutes, the mobile home park owner is required to pay specified sums to the trust fund administered by the FMHRC.[8] In turn, the mobile home owner who complies with the requirements in section 723.0612, Florida Statutes, is entitled to payment from the FMHRC for relocation expenses.[9]
Thus, Chapter 723, Florida Statutes, provides specific procedures to be followed when a mobile home park owner evicts mobile home owners due to a change in use of the land comprising the mobile home park. As the Legislature has made clear its intent to preempt all matters and things relating to the landlord-tenant relationship treated by or falling within the purview of Chapter 723, any attempt by the county to alter or augment such requirements would be null and void.[10]
Accordingly, it is my opinion that the county may not adopt an ordinance imposing additional conditions to the vacation of a mobile home park where the owner of the park has followed the mandates of Chapter 723, Florida Statutes.
Sincerely,
 Bill McCollum Attorney General
BM/tals
[1] See s. 723.002(1), Fla. Stat.
[2] Section 723.004(1), Fla. Stat.
[3] Section 723.004(3), Fla. Stat.
[4] See s. 723.061(3), Fla. Stat., stating: "The provisions of s. 723.083 shall not be applicable to any park where the provisions of this subsection apply." A footnote explains that "this subsection" refers to subsection (2) [the provision addressing eviction for change of use] in which subsection (3) was contained prior to amendment by s. 6, Ch. 2001-227, Laws of Fla.
[5] See Inf. Op. to The Hon. Leslie Waters, November 14, 2005.
[6] See s. 723.061(2), Fla. Stat. Seealso s. 723.0612, Fla. Stat., providing for relocation expenses to a mobile home owner required to move due to a change in use of the land under s. 723.061(1)(d).
[7] See also s. 723.06115, Fla. Stat., establishing the Florida Mobile Home Relocation Trust Fund.
[8] See s. 723.06116, Fla. Stat.
[9] See s. 723.0612, Fla. Stat.
[10] See Ops. Att'y Gen. Fla. 90-01 (1990), 86-62 (1986), 81-07 (1981), and 79-109 (1979), which discuss the authority of charter counties to enact ordinances not inconsistent with general law. And seeCampbell v. Monroe County,426 So. 2d 1158, 1161 (Fla. 3d DCA 1983), stating that a county ordinance may not conflict with any controlling provisions of a state statute and if any doubt exists, such doubt is to be resolved against the ordinance.