858 F.2d 1521
 Henry A. SCURLOCK, Robert S. Scurlock Debra L. Scurlock and
Statewide Mobile Homes of Florida, Inc., a Florida
Corporation, Plaintiffs-Appellees,
v.
CITY OF LYNN HAVEN, FLORIDA, Defendant-Appellant.
 Nos. 87-3298, 87-3675.
 United States Court of Appeals,
Eleventh Circuit.
 Oct. 31, 1988.
 
 Larry A. Bodiford, Panama City, Fla., for defendant-appellant.
 Lynn C. Higby, Bryant, Higby & Williams, Panama City, Fla., Keith C. Tischler, Madigan, Parker, Gatlin, Swedmark, & Skelding, Tallahassee, Fla., for plaintiffs-appellees.
 Robert Sasser, Alabama Manufactured Housing Institute: Webb, Crumpton, McGregor, Sasser, Davis & Alley, Montgomery, Ala., for amicus curiae.
 Appeals from the United States District Court for the Northern District of Florida.
 Before KRAVITCH and CLARK, Circuit Judges, and NICHOLS*, Senior Circuit Judge.
 CLARK, Circuit Judge:
 
 
 1
 The City of Lynn Haven ("Lynn Haven" or "City") appeals from an order holding that a portion of its municipal code is preempted by federal and state law (No. 87-3298) and separately from an order awarding attorney's fees to the plaintiffs under 42 U.S.C. Sec. 1988 (No. 87-3675). In No. 87-3298, we affirm. In No. 87-3675, we vacate the award of attorney's fees and remand.
 
 
 2
 This case involves the regulation and placement of mobile homes[1] in Lynn Haven. Robert E. and Debra L. Scurlock (collectively "the Scurlocks") own a mobile home and desire to place it on residentially-zoned property owned by Mr. Scurlock's father (the "Montana Avenue" property). The Scurlocks' home meets the requirements of the National Manufactured Housing and Safety Standards Act of 1974, 42 U.S.C. Secs. 5401-5426 ("the Act"), and the regulations adopted pursuant thereto, see 24 C.F.R. Secs. 3280-3282 ("HUD regulations"). Unlike another type of dwelling known as a "manufactured building," however, the Scurlocks' mobile home does not bear the seal of the Florida Department of Community Affairs.[2]
 
 
 3
 The City's municipal code imposes a zoning regulation on the Montana Avenue property which excludes any home that either does not meet the Southern Standard Building Code, the National Electrical Code, and the Electrical Code of the City of Lynn Haven (collectively "SSBC"), or does not bear the seal of the Florida Department of Community Affairs. The Scurlocks' mobile home meets neither prong of this regulation. It does, however, satisfy all other requirements for siting on the Montana Avenue lot.[3] The City's inspector acknowledged that if the Scurlocks' mobile home either had the appropriate seal or met the SSBC, it would have been allowed on the zoned property.
 
 
 4
 Lynn Haven allows mobile homes to be placed in unzoned areas of the City[4] and in licensed public trailer parks in special mobile home districts. Four such trailer parks are located within the City, collectively containing approximately 90 mobile homes. Because the Scurlocks "wouldn't live in any of them," they initially attempted to obtain a variance from the Lynn Haven City Commission so that they could place their mobile home on the Montana Avenue lot. After the Commission rejected their request the Scurlocks brought this suit in federal court, claiming that portions of the City's municipal code violated their rights to substantive due process and equal protection under the fourteenth amendment and were preempted by the Act, the HUD regulations, and sections 320.827 and 320.8285 of the Florida Statutes.
 
 
 5
 Much of the evidence at trial concerned the differences between the HUD requirements and those contained in the SSBC. Expert testimony indicated that, for the most part, the standards are equivalent. However, there is no dispute that the HUD regulations and the SSBC are not identical. For example, under the Southern Standard Building Code housing must withstand winds of up to 110 miles per hour, while under the HUD regulations mobile homes need only withstand winds of up to 97-99 miles per hour. In addition, electrical wiring deemed adequate by HUD may be insufficient to meet the City's local electrical code. Because of these differences, the district court determined that the City could not use noncompliance with the SSBC to prevent mobile homes from being sited on residentially-zoned property. It held that the Act, the HUD regulations, and the Florida statutes precluded municipalities from imposing additional construction requirements upon mobile homes built in compliance with the HUD regulations. The court therefore enjoined the City from prohibiting the Scurlocks from placing their mobile home on the Montana Avenue lot and granted attorney's fees to the Scurlocks under 42 U.S.C. Sec. 1988. From these decisions Lynn Haven appeals.
 
 DISCUSSION
 A. Federal Preemption
 
 6
 "As in all matters of statutory construction, [federal] preemption, which has its roots in the Supremacy Clause, is a matter of congressional intent." Gushke v. City of Oklahoma City, 763 F.2d 379, 383 (10th Cir.1985). Congress may evidence its intent explicitly by defining the extent to which state law is to be preempted. Michigan Canners & Freezers Ass'n, Inc. v. Agricultural Mktg. and Bargaining Bd., 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399 (1984). Such express preemptive language may be found on the face of a statute, in its legislative history, or in regulations promulgated pursuant to the law. Howard v. Uniroyal, Inc., 719 F.2d 1552, 1556 (11th Cir.1983). In addition, preemptive intent may be inferred when Congress legislates comprehensively, thus occupying an entire field of regulation, or when state law actually conflicts with federal law and stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. Michigan Canners, 467 U.S. at 469, 104 S.Ct. at 2523. While Congress is free to statutorily overturn a finding of no preemption, a state has no recourse once its enactment is held to be preempted by federal law. Thus, if federal and state statutes overlap, they should be reconciled if at all possible. See Don't Tear It Down, Inc. v. Pennsylvania Ave. Dev. Corp., 642 F.2d 527, 534 (D.C.Cir.1980) (quoting Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Ware, 414 U.S. 117, 127, 94 S.Ct. 383, 389, 38 L.Ed.2d 348 (1973)); see also Chevron U.S.A., Inc. v. Hammond, 726 F.2d 483, 488, 496-97 (9th Cir.1984), cert. denied sub nom. Chevron U.S.A., Inc. v. Sheffield, 471 U.S. 1140, 105 S.Ct. 2686, 86 L.Ed.2d 703 (1985).
 
 
 7
 In this case Congress has expressly defined the preemptive reach of the Act:
 
 
 8
 Whenever a Federal [mobile] home construction and safety standard established under this chapter is in effect, no State or political subdivision of a State shall have authority either to establish, or to continue in effect, with respect to any [mobile] home covered, any standard regarding construction or safety applicable to the same aspect of performance of such [mobile] home which is not identical to the Federal [mobile] home construction and safety standard.
 
 
 9
 42 U.S.C. Sec. 5403(d). The language of the statute clearly precludes states and municipalities[5] from imposing construction and safety standards upon mobile homes that differ in any respect from those developed by HUD. Thus, if the Lynn Haven ordinance conditioned mobile home entry into or sale in the town on compliance with the SSBC, thereby forcing manufacturers to meet construction and safety requirements other than HUD standards in order to do business in the City, the municipal act would be preempted. Cf. 24 C.F.R. Sec. 3282.11(b) (states may not condition mobile home entry or sale on state inspection if home bears label certifying compliance with HUD regulations). Although HUD-approved mobile homes may be sited in unzoned areas of the City, and licensed trailer parks, if the mobile home is to be sited in residentially-zoned regions, it must meet requirements other than those specified by HUD. As stated by the district court:
 
 
 10
 The City has not attempted to explain why a mobile home is accepted as safely constructed when it is located in a designated mobile home park or an unzoned area of the City, while maintaining that it is not safely constructed if it is located within a residentially-zoned area.
 
 
 11
 At 13.
 
 
 12
 In considering the federal legislation and its impact upon the ordinance enacted by Lynn Haven, we must turn to the legislative history and the HUD regulations in order to resolve the federal preemption issue. According to Congress, the purposes of the Act "are to reduce the number of personal injuries and deaths and the amount of insurance costs and property damage resulting from [mobile] home accidents and to improve the quality and durability of [mobile] homes." 42 U.S.C. Sec. 5401. The Act undoubtedly represents consumer safety legislation. See 1974 U.S. Code Cong. & Admin. News 4279, 4340. Under its provisions, manufacturers of mobile homes must notify purchasers about any construction or safety defects and correct many at no charge to the consumers. See id. Sec. 5414(a), (g). If a manufacturer discovers a defect before the mobile home is purchased by the consumer, it must "immediately repurchase" the home from the dealer or provide for repairs. Id. Sec. 5412(a). Moreover, HUD is authorized to release to the public information concerning construction and safety defects present in particular homes, id. Sec. 5413(c)(5), and manufacturers must provide purchasers with manuals explaining the operation, maintenance, and repair requirements of their mobile homes, id. Sec. 5416. Finally, the Act states that "[t]he rights afforded [mobile] home purchasers under this chapter may not be waived, and any provision of a contract ... to the contrary shall be void." Id. Sec. 5421. However, while consumer protection represents the primary goal of the legislation, complete safety is not to be obtained at all expense: in promulgating regulations, HUD must "consider the effect of [the standards] on the cost of [mobile] home[s] to the public." Id. Sec. 5403(f)(4).
 
 
 13
 Pursuant to this congressional mandate HUD has developed standards covering "all equipment and installations in the design, construction, fire safety, plumbing, heat-producing and electrical systems of [mobile] homes." 24 C.F.R. Sec. 3280.1(a). The HUD regulations seek to establish performance requirements, see id. Sec. 3280.1(b), in order to protect the public against any unreasonable risk of death, injury, or the occurrence of accidents due to the design or construction of mobile homes, see id. Sec. 3280.2(a)(18). Among the regulations is one guiding our analysis of the federal preemption issue:
 
 
 14
 No State or locality may establish or enforce any rule or regulation or take any action that stands as an obstacle to the accomplishment and execution of the full purposes and objectives or Congress. The test of whether a State rule or action is valid or must give way is whether the State rule can be enforced or the action taken without impairing the Federal superintendence of the [mobile] home industry as established by the Act.
 
 
 15
 Id. Sec. 3282.11(e) (emphasis added). Thus, we must determine whether the Lynn Haven zoning ordinance impairs the federal superintendence of the mobile home industry under the Act.
 
 
 16
 The law is well-settled that governmental bodies like Lynn Haven "have the right to set minimum standards for housing in residentially-zoned districts." Grant v. County of Seminole, Fla., 817 F.2d 731, 736 (11th Cir.1987). Municipalities may zone land to pursue any number of legitimate objectives related to the health, safety, morals, or general welfare of the community. See generally 1 R. Anderson, American Law of Zoning 3d Secs. 7.01-7.03 (1986). The City is attempting to exclude the Scurlock's mobile home from its R-AA section based solely on its safety code. The City building inspector agreed that if the home met the Southern Building Code requirement, a permit would be issued. Thus the City apparently wishes to apply its safety code to enforce land use. Undoubtedly it could limit Zone R-AA to conventionally-built residences and exclude mobile homes. See Grant v. Seminole County, 817 F.2d at 736, and Campbell v. Monroe County, 426 So.2d 1158, 1161 (Fla.Dist.Ct.App.1983).
 
 
 17
 Since the City ordinance has greater safety requirements for a mobile home than the Federal Act, the ordinance must give way to the Act. There is no other impediment to the Scurlock's being granted a building permit and we affirm the district court. The City cannot attempt land use and planning through the guise of a safety provision in an ordinance when that safety requirement is preempted by federal law. See Pacific Gas & Electric Co. v. State Energy Resources Commission, 461 U.S. 190, 204-16, 103 S.Ct. 1713, 1722-28, 75 L.Ed.2d 752 (1983).
 
 B. State Preemption
 
 18
 Under Florida law, "preemption" of local legislation cannot occur absent an express, specific statement by the state legislature. See, e.g., Tribune Co. v. Cannella, 458 So.2d 1075, 1077 (Fla.1984), appeal dismissed sub nom. DePerte v. Tribune Co., 471 U.S. 1096, 105 S.Ct. 2315, 85 L.Ed.2d 835 (1985); Board of Trustees v. Dulje, 453 So.2d 177, 178 (Fla.Dist.Ct.App.1984). A lack of express preemption does not automatically validate a local enactment, however. Rather, even "[w]here both the state and a municipality are empowered to legislate on a topic, the municipality [still] may not enact legislation which directly conflicts with the state statute. [If] a conflict arises, the state statute must prevail." Board of Trustees, 453 So.2d at 178; see also Edwards v. State, 422 So.2d 84, 85 (Fla.Dist.Ct.App.1982) ("A state statute always prevails over a conflicting municipal ordinance."). Moreover, any doubts as to the existence of a conflict are to be resolved against the local ordinance and in favor of the state statute. See Campbell v. Monroe County, 426 So.2d 1158, 1161 (Fla.Dist.Ct.App.1983). Thus, even though Florida follows a "restrictive application of the preemption doctrine," Tribune Co., 458 So.2d at 1077, municipal legislation remains invalid to the extent it conflicts with state law.
 
 
 19
 The Florida legislature, recognizing the supremacy of the Act with respect to the construction and safety of mobile homes, has adopted the HUD regulations as its own. See 42 U.S.C. Sec. 5403(d) (authorizing states to establish regulations identical to the federal standards); Fla.Stat. Sec. 320.823. Florida also has expressly reserved to municipalities the right to enact zoning regulations that affect mobile homes. Section 320.8285(5) of the state's motor vehicle code provides that "[t]he Department of Highway Safety and Motor Vehicles shall enforce every provision of this section and the regulations adopted pursuant hereto, except that local land use and zoning requirements ... are hereby specifically and entirely reserved to local jurisdictions." Although the Florida legislature has reserved to localities the power to zone, it has placed significant restrictions on that power as it may be applied to mobile homes: "Such local requirements and regulations and others must be reasonable, uniformly applied, and enforced without distinctions as to whether such housing is manufactured, located in a mobile home park or a mobile home subdivision, or built in a conventional manner." Fla.Stat. Sec. 320.8285(5) (emphasis added). According to the Scurlocks, the Lynn Haven zoning regulation conflicts with these restrictions.
 
 
 20
 The question of whether the City's ordinance as applied to the Scurlocks' mobile home conflicts with section 320.8285(5) is a difficult one. See Grant, 817 F.2d at 732 ("a novel question of state law that [is] by no means clearcut"). The statute's meaning has not been authoritatively interpreted by the Florida courts. However, we do possess several tools that guide our analysis in this area. First, in Campbell, 426 So.2d at 1160, a Florida Court of Appeals construed a statutory restriction relating to manufactured buildings that is similar to the one at issue here. Because we have no indication that the Florida Supreme Court would have found the Campbell result to have been error, we are persuaded by the decision therein. See Allen v. A.G. Edwards & Sons, Inc., 606 F.2d 84, 87 (5th Cir.1979); see also Bradbury v. Wainwright, 718 F.2d 1538, 1540 (11th Cir.1983). Second, we give substantial weight to the local district court's interpretation of section 320.8285(5). See Eason v. Weaver, 557 F.2d 1202, 1206 (5th Cir.1977); see also Southern Ry. Co. v. State Farm Mut. Auto. Ins. Co., 477 F.2d 49, 52 n. 3 (5th Cir.1973) ("A district judge's determinations on questions involving the law of his state are entitled to great weight."). Finally, we recognize Campbell 's admonition that any doubts must be resolved against the ordinance. Campbell, 426 So.2d at 1161. With these analytical principles in mind, we return to the question at hand.
 
 
 21
 In Campbell, the Florida court was faced with a local regulation that for aesthetic purposes required residences to be constructed of masonry. Id. at 1159 n. 1. Much as is the case here, however, state law restricted the zoning power of local authorities regarding manufactured buildings by requiring them to "enforce their regulations 'without any distinction as to whether [a dwelling] is a conventionally constructed or manufactured building.' " Id. at 1160. The local ordinance served to preclude the purchaser of a manufactured building from locating his dwelling on certain residentially-zoned property, for even though his dwelling satisfied the building code and looked as though it was made of masonry, it actually was constructed of steel, wood, and stucco. According to the court, the local ordinance conflicted with the state statute:
 
 
 22
 it is all too clear that enforcement of the ordinance against [the purchaser] serves only to exclude products or techniques used in factory-built housing. There is no showing of any local condition which justifies a requirement that bricks or stones be used to construct the exterior walls of residential housing, to the exclusion of walls constructed of steel, studs and ribbed lath covered with three-fourths inch of stucco--an approved technique which is used by [the manufacturer].
 
 
 23
 Id. Because of the conflict, application of the ordinance to manufactured buildings was invalid:
 
 
 24
 [This section] of the Monroe County Code is void as applied herein because by requiring that homes in a [residentially-zoned district] be constructed of masonry ..., with no showing of a relationship of that requirement to aesthetic uniformity or safety, the ordinance in effect discriminates against factory-built housing in violation of state statutes.
 
 
 25
 Id.
 
 
 26
 In this case we deal not with aesthetic regulations but with structural ones. The Scurlocks' mobile home, although constructed using techniques approved by both the state and federal governments, is precluded by the Lynn Haven building code from being sited on the Montana Avenue lot. As the district court found, because site-built homes and manufactured buildings could be located there, the ordinance seems to exclude only products or techniques used in constructing mobile homes, in contradiction of that portion of section 320.8285(5) requiring localities to enforce regulations "without distinctions as to whether such housing is manufactured ... or built in a conventional manner." Moreover, Lynn Haven made no showing of a local condition establishing the necessity of adhering to the SSBC when the evidence indicates little difference between it and the HUD regulations as far as the safety and structural integrity of the homes are concerned. Nor would such a showing have mattered here. Assume, for example, that Lynn Haven established that local winds reached speeds of more than 97-99 miles per hour, the maximum velocity for which manufacturers must construct mobile homes under the HUD regulations. Under the Campbell analysis, the showing might justify Lynn Haven's decision not to allow the Scurlocks to site their home on Montana Avenue. However, section 320.8285(5) goes even further than the statute discussed in Campbell. Under section 320.8285(5), localities must also enforce ordinances "without distinctions as to whether such housing is ... located in a mobile home park." The City concedes that based on its code the Scurlocks' home can be sited in a mobile home park merely by meeting the HUD regulations concerning construction and safety. Thus, under Florida law Lynn Haven cannot require mobile homes to meet other construction and safety requirements in order to be sited outside of these parks; to do so would make distinctions as to whether the homes were or were not located within mobile home parks. Because the Lynn Haven zoning ordinance as applied to the Scurlocks conflicts with section 320.8285(5), it cannot be used to prohibit them from locating their mobile home on the Montana Avenue property.[6] We therefore AFFIRM the decision of the district court in No. 87-3298.
 
 C. Attorney's Fees
 
 27
 Section 1988 of Title 42 provides that "[i]n any action or proceeding to enforce a provision of section[ ] ... 1983, ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." According to Congress, section 1988 does not require that a litigant actually obtain relief under section 1983, however. Rather, in some cases the court may award attorney's fees when a party prevails on other grounds:
 
 
 28
 "To the extent a plaintiff joins a [section 1983] claim ... with a claim that does not allow attorney's fees, that plaintiff, if it prevails on the non-fee claim, is entitled to a determination on the other claim for the purpose of awarding counsel fees. In some instances, however, the claim with fees may involve a constitutional question which the courts are reluctant to resolve if the non-constitutional claim is dispositive. In such cases, if the claim meets the 'substantially' test, attorney's fees may be allowed even though the court declines to enter judgment for the plaintiff on that claim, so long as the plaintiff prevails on the non-fee claim arising out of a 'common nucleus of operative fact.' "
 
 
 29
 Maher v. Gagne, 448 U.S. 122, 132 n. 15, 100 S.Ct. 2570, 2576 n. 15, 65 L.Ed.2d 653 (1980) (quoting H.R.Rep. No. 94-1558, at 4 n. 7 (1976)) (citations omitted). In addition, the unaddressed fee claim must be "reasonably related to the plaintiff's ultimate success." Smith v. Robinson, 468 U.S. 992, 1007, 104 S.Ct. 3457, 3465, 82 L.Ed.2d 746 (1984). Thus, in order to receive attorney's fees when only non-fee claims are addressed, a plaintiff must show that it (1) has "prevailed" and that the section 1983 claim (2) meets the "substantiality" test, (3) arises from a "common nucleus of operative fact" with the non-fee claims, and (4) is "reasonably related to the plaintiff's ultimate success."
 
 
 30
 Prongs (1), (3), and (4) of this test are not seriously in dispute here. The Scurlocks sought in their complaint a declaration invalidating the Lynn Haven ordinance and an injunction prohibiting the City from interfering with the placement of their mobile home. The district court granted this relief and we have affirmed. Thus, because the Scurlocks "received substantially the relief requested," Martin v. Heckler, 773 F.2d 1145, 1149 (11th Cir.1985), they are "prevailing parties" within the meaning of section 1988. In addition, the Scurlocks' fee and non-fee claims both arose out of the City's refusal to permit them to site their mobile home on the Montana Avenue property. This key fact forms the "common nucleus" from which all the theories for recovery derived. Finally, fee claims are "reasonably related" if they are aimed at achieving the same result based on the same facts or legal theories. See Smith, 468 U.S. at 1015, 104 S.Ct. at 3470; accord Seaway Drive-In, Inc. v. Township of Clay, 791 F.2d 447, 455 (6th Cir.), cert. denied, 479 U.S. 884, 107 S.Ct. 274, 93 L.Ed.2d 251 (1986). In other words, if the fee and non-fee claims merely present alternate theories of recovery for the same injury, they are reasonably related. See Seaway, 791 F.2d at 455. In this regard we agree with the district court:
 
 
 31
 The relief [sought and] obtained by the [Scurlocks] here was a declaration that certain aspects of the City of Lynn Haven zoning and building regulations were unconstitutional and an injunction barring the City of Lynn Haven from enforcing the unconstitutional aspects of those regulations. Because [s]ection 1983 specifically provides for equitable relief, and declaratory relief is available on any claim that presents an actual controversy [28 U.S.C. Sec. 2201], [the Scurlocks'] [s]ection 1983 claim was simply an alternate basis of obtaining the relief received on preemption grounds.
 
 
 32
 The difficult issue in this appeal is whether the Scurlocks' section 1983 claim meets the "substantiality" element of Maher. A claim is "substantial" if it remains "open to discussion," is not "obviously frivolous," and is not foreclosed by prior court decisions or not "otherwise completely devoid of merit." See Hagans v. Lavine, 415 U.S. 528, 537, 543, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577 (1974). According to the district court:
 
 
 33
 The complaint in this case alleges in relevant part that Lynn Haven's Municipal Code denies due process and equal protection of the laws because it discriminates without any rational basis between forms of manufactured housing. Specifically, it permits the siting of manufactured buildings in areas zoned [as residential], but prohibits the siting of [mobile] homes in any ... district except mobile home districts.... [T]he complaint states that the two forms of manufactured housing are governed by comparable construction standards; that the [mobile] homes in question are as aesthetically pleasing as the manufactured buildings permitted in [residential areas]; and that [mobile] homes are attached to real property in a way that makes them as permanent as manufactured buildings. The complaint also suggests that there is no rational basis for allowing [mobile] homes to be located in a mobile home district, but not elsewhere. These allegations, I believe, sufficiently indicate that Lynn Haven's Municipal Code discriminates against manufactured homes in a way that bears no substantial relation to the public health, safety, morals, or general welfare. I conclude, therefore, that the plaintiffs' equal protection and due process claims were substantial under Hagans....
 
 
 34
 Before the district court entered this order, but after trial, this court decided the case of Grant v. County of Seminole, Fla., 817 F.2d 731 (11th Cir.1987).[7] Grant involved a constitutional challenge based on virtually identical facts[8]: the county allowed manufactured buildings but not mobile homes to be sited in a particular residential zone. See Grant, 817 F.2d at 733. The trial court upheld the zoning regulations, however, holding that they were rationally related to legitimate governmental goals. Specifically, testimony indicated that debatable issues existed regarding wind vulnerability of mobile homes, among other things, and that the locality allowed mobile homes to be placed elsewhere. The Grant plaintiffs also failed to demonstrate that the county had no rational basis for distinguishing between manufactured buildings and mobile homes. See id. at 836. On appeal, this court likewise rejected the section 1983 arguments, and affirmed on the basis of the district court's opinion. Id. at 832.
 
 
 35
 The Grant decision casts serious doubt on the "substantiality" of the Scurlocks' section 1983 claim. If Grant had been decided by this court (and therefore been binding on the district court) before the Scurlocks filed their complaint, we suspect that the section 1983 claim effectively would have been foreclosed by the decision. However, at the time this case was tried only a non-binding decision of the Middle District of Florida had been rendered. Because the district court's opinion in this case makes no reference to the Grant decision, we vacate the attorney's fee award and remand for reconsideration in light of Grant.[9] In determining whether and in what amount attorney's fees should be awarded, the district court may consider the date of the Grant decision and whether and how its holding affects the Scurlocks' section 1983 claim.[10] We therefore VACATE the judgment of the district court in No. 87-3675 and REMAND for proceedings consistent with this opinion.
 
 
 
 *
 Honorable Philip Nichols, Jr., Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation
 
 
 [1]
 In this opinion, the term "mobile home" is equivalent to the terms "manufactured home," as appears in the Florida Statutes, and "trailer," as appears in the Lynn Haven Municipal Code
 
 
 [2]
 Manufactured buildings are factory-built houses and are transported to the site upon which they are to be located. Unlike mobile homes, however, manufactured buildings are not constructed on a chassis. Manufactured buildings are inspected at the factory by the Florida Department of Community Affairs and are built to the Southern Standard Building Code, which also applies to site-built homes. Grant v. County of Seminole, Fla., 817 F.2d 731, 733 (11th Cir.1987)
 
 
 [3]
 The lot itself also meets all requirements for the residential zoning classification
 
 
 [4]
 At the time of trial, six mobile homes were located in unzoned areas
 
 
 [5]
 Preemption analysis is the same for both state statutes and local ordinances. City of Burbank v. Lockheed Air Terminal, Inc., 411 U.S. 624, 638, 93 S.Ct. 1854, 1862, 36 L.Ed.2d 547 (1973)
 
 
 [6]
 Any doubt as to the language of the statute and whether it conflicts with the Lynn Haven zoning regulation has been resolved in favor of the statute and against the ordinance. See Campbell, 426 So.2d at 1161
 
 
 [7]
 The trial of this case occurred on August 25-26, 1986. On May 27, 1987, the Grant decision was issued, and on September 4, 1987 the district court granted the Scurlocks' request for attorney's fees
 
 
 [8]
 In fact, the same lawyer represented the plaintiffs in Grant and in this case
 
 
 [9]
 The parties agree that an argument based on federal preemption is not cognizable under 42 U.S.C. Sec. 1983. See Pirolo v. City of Clearwater, 711 F.2d 1006, 1011 (11th Cir.1983). Thus, even if we had affirmed the decision in No. 87-3298 on federal preemption grounds we would still remand on this question
 
 
 [10]
 Cf. Hamer v. County of Lake, 819 F.2d 1362, 1367-68 & nn. 11-12 (7th Cir.1987) (discussing intervening legal developments rendering lawsuits frivolous so that defendants may receive attorney's fees under section 1983)