**MICHIGAN MANUFACTURED
HOUSING ASSOCIATION,
et al., Plaintiffs,**

v.

**ROBINSON TOWNSHIP, Defendant.**

No. 5:99–CV–31.

United States District Court,
W.D. Michigan,
Southern Division.

Aug. 26, 1999.

William J. Perrone, Christine M. Mason Soneral, Dykema Gossett, Lansing, MI, for Michigan Manufactured Housing Ass'n and A1 Manufactured Homes Inc. and Paul and Marlene Inc., plaintiffs.

Michael S. Bogren, Plunkett & Cooney, PC, Kalamazoo, MI, for Robinson Tp., defendant.

### OPINION

QUIST, District Judge.

Plaintiffs, Michigan Manufactured Housing Association ("MMHA"), A1 Manufactured Homes, Inc. ("A1"), and Paul and Marlene, Inc., d/b/a Grand Value Homes (collectively "Plaintiffs"), have sued Defendant, Robinson Township (the "Township"), for declaratory and injunctive relief to stop alleged violations by the Township of regulations promulgated by the United States Department of Housing and Urban Development ("HUD") pursuant to the National Manufactured Housing Construction and Safety Standards Act of 1974, 42 U.S.C. §§ 5401–5426 (the "Act"). Plaintiffs also allege that the Township's failure to follow the HUD regulations violates state law, specifically M.C.L. § 125.2307(6), which governs the relationship between local government ordinances concerning mobile homes and HUD regulations. This matter is before the Court on Plaintiffs' motion for summary judgment and Defendant's motion for leave to file a third party complaint against HUD.

### Facts

The facts of this case are not substantially disputed. On October 19, 1998, the Township adopted Ordinance Number 98–04 as an amendment to the text of the Township's Zoning Ordinance. The Ordinance states:

All dwellings, whether or not mobile homes, shall comply with all pertinent building, zoning, fire and other applicable codes. In the case of a mobile home, all construction and all plumbing, electrical apparatus and installation within and connected to the mobile home shall be of a type and quality conforming to the "Manufactured Home Construction and Safety Standards," as promulgated by the United States Department of Housing and Urban Development in the Code of Federal Regulations, and as amended from time to time. *However, all dwell-ings, including mobile homes, must meet the roof snow load and strength requirements applicable to site built structures.*

(Robinson Township Ordinance No. 98–04, Def.'s Br. Ex. 1 (emphasis added).)

The Township applies and enforces the roof and snow load capacity requirements of the Building Officials Conference of America Code ("BOCA Code"). Under the BOCA Code, as applied by the township, roof and snow load requirements are forty pounds per square foot ("40 PSF"). (*See* BOCA Chapter 16 Structural Loads, Def.'s Br. Ex. 3.)

HUD has promulgated regulations pursuant to the Act governing roof and snow loads for manufactured homes. Under the HUD regulations, roof and snow load requirements for the Township are twenty pounds per square foot ("20 PSF"). *See* 24 C.F.R. § 3280 .305(c)(3).

According to Plaintiffs, they were unable to secure building permits from the Township for manufactured homes constructed in accordance with HUD's 20 PSF requirement. (*See* Morse Aff. ¶¶ 4–6., Pls.' Br. Ex. A.) In at least one instance, A1 hired a professional engineer to make modifications to the manufactured home's blueprints so that it would comply with the Township's 40 PSF requirement, at which point the Township approved the modified blueprints and issued the necessary building permits. (*See id.* ¶¶ 7–8.)

According to the Township's building inspector, William Easterling, the modification requires "nailing additional 2x4's to existing roof trusses to increase the roof load." (Easterling Aff. ¶ 6, Def.'s Br. Ex. 2.) Easterling also states that he is "aware that many of the manufacturers of mobile homes and manufactured homes market kits which allow this modification to be made." (*Id.* ¶ 7.) The affidavit of C. Edgar Bryant, Vice–President of Engineering at Champion Enterprises, Inc., a builder of manufactured homes, contradicts Easterling's affidavit, in that Bryant testified that

he was "not aware of any manufactured home market kit which permits a HUD certified home to be modified to comply with a 40 PSF snow and roof load requirement." (Bryant Aff. ¶ 8, Pls.' Reply Br. Ex. 1.) Bryant also indicated that "[a]ny modification to the roof of a HUD certified manufactured home potentially removes the roof from warranty coverage," and that "[a] manufactured home which is modified after completion and certification to meet a snow and roof load requirement other than its design load would not conform with HUD construction standards." (*Id.* ¶¶ 6–7.)

### Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56. The rule requires that the disputed facts be material. Material facts are facts which are defined by substantive law and are necessary to apply the law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute over trivial facts which are not necessary in order to apply the substantive law does not prevent the granting of a motion for summary judgment. *See id.* at 248, 106 S.Ct. at 2510. The rule also requires the dispute to be genuine. A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *See id.* This standard requires the non-moving party to present more than a scintilla of evidence to defeat the motion. *See id.* at 251, 106 S.Ct. at 2511 (citing *Schuylkill and Dauphin Improvement Co. v. Munson*, 14 Wall. 442, 448, 20 L.Ed. 867 (1871)). The summary judgment standard mirrors the standard for a directed verdict. *See id.* at 250, 106 S.Ct. at 2511. The only difference between the two is procedural. *See id.* Summary judgment is made based on documentary evidence before trial, and directed verdict is made based on evidence submitted at trial. *See id.*

A moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the motion is so supported, the party opposing the motion must then demonstrate with "concrete evidence" that there is a genuine issue of material fact for trial. *Id.*; *see also Frank v. D'Ambrosi*, 4 F.3d 1378, 1384 (6th Cir. 1993). The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

### Analysis

## I. Preemption of Township's ordinance

### A. Preemptive effect of federal statute

Plaintiffs argue that the ordinance is a building or construction standard explicitly preempted by the Act, while Defendant argues that the ordinance is a zoning ordinance that governs local land use and is therefore not preempted by the Act.

■■■ Congressional intent to preempt state or local law can be explicitly stated in the statute or implied through comprehensive legislation or a conflict between the state and federal law. *See Michigan Canners and Freezers Ass'n, Inc. v. Agricultural Marketing and Bargaining Bd.*, 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399 (1984). Congress has expressly defined the preemptive reach of the Act, stating that:

> Whenever a Federal manufactured home construction and safety standard established under this title is in effect, no State or political subdivision of a State shall have any authority either to

establish, or to continue in effect, with respect to any manufactured home covered, *any standard regarding construction or safety applicable to the same aspect of performance of such manufactured home which is not identical to the Federal manufactured home construction and safety standard.*

42 U.S.C. § 5403(d) (emphasis added). Federal preemption is further evidenced in the regulations passed by HUD pursuant to the Act:

No State or locality may establish or enforce any rule or regulation or take any action that stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. The test of whether a State rule or action is valid or must give way is whether the State rule can be enforced or the action taken *without impairing the Federal superintendence of the manufactured home industry as established by the Act.*

24 C.F.R. § 3282.11(d) (emphasis added). Thus, states and municipalities are precluded "from imposing construction and safety standards upon mobile homes that differ in any respect from those developed by HUD." *Scurlock v. City of Lynn Haven,* 858 F.2d 1521, 1524 (11th Cir.1988); *see also Colorado Manufactured Hous. v. Board of County Comm'rs.,* 946 F.Supp. 1539, 1550 (D.Colo.1996) (mem.op.).

■ The issue of whether a municipality's ordinance is a construction or safety standard preempted by the Act or a local land use provision not preempted by the Act has been addressed by other courts. In *Scurlock,* the city prefaced the building of all homes in the city, including mobile homes, on compliance with local construction and safety standards, namely compliance with the Southern Standard Building Code. The Eleventh Circuit specifically rejected the argument by the city that its ordinance was merely a local land use ordinance not preempted by the Act, holding that "the city cannot attempt land use and planning through the guise of a safety

provision in an ordinance when that safety requirement is preempted by federal law." *Scurlock,* 858 F.2d at 1525.

Conversely, courts have held that if the state or local ordinance does not conflict with any HUD requirements nor deal with construction and safety, then the preemption doctrine does not apply. *See Georgia Manufactured Hous. Ass'n, Inc. v. Spalding County,* 148 F.3d 1304, 1310 (11th Cir.1998) (holding that zoning ordinances relating to aesthetics and not consumer safety are not preempted); *Texas Manufactured Hous. Ass'n, Inc. v. Nederland,* 101 F.3d 1095, 1100 (5th Cir.1996) (holding that the local ordinance was not preempted primarily because there was no link between the requirements of the ordinance and the HUD requirements); *CMH Mfg., Inc. v. Catawba County,* 994 F.Supp. 697, 708 (W.D.N.C.1998) (holding that roofing requirements of a local ordinance were strictly aesthetic and thus not preempted).

There is a Michigan Supreme Court case that seems to be in opposition to the above-mentioned line of federal cases. In *Gackler Land Co. v. Yankee Springs Township,* 427 Mich. 562, 398 N.W.2d 393 (1986), Yankee Springs Township enacted a zoning ordinance which had the effect of excluding all single-wide mobile homes. The ordinance included a provision that required all mobile homes to comply with all pertinent building and fire codes. The Michigan Supreme Court held that the local ordinance was not preempted because its purpose was for regulating land use. *See Gackler,* 427 Mich. at 580, 398 N.W.2d at 401.

This reasoning is at odds with the federal line of cases and has been criticized. For example, after a detailed analysis of the cases on the issue of preemption under the Act, one federal court concluded that "Gackler is poorly reasoned with respect to the preemption issue." *Colorado Manufactured Housing,* 946 F.Supp. at 1551. Specifically, the court in *Colorado Manufactured Housing* found *Gackler* to be incorrect because "[u]nder the reasoning in

*Gackler,* an ordinance could impose very strict building and safety standards for manufactured housing that clearly conflict with the HUD regulations but preemption would be inapplicable because of the ordinance's overall 'purpose' of regulating land use." *Id.* The federal cases are clear that local or state governments cannot "attempt land use and planning through the guise of a safety provision in an ordinance when that safety requirement is preempted by federal law." *Scurlock,* 858 F.2d at 1525.

Besides being contrary to the federal cases on the issue, *Gackler* is distinguishable on its facts. In *Gackler,* the plaintiff did not identify a direct conflict between local and federal safety regulations. In this case, however, the local ordinance required a roof and snow load requirement of 40 PSF. Pursuant to the Act, HUD has promulgated regulations which require roof and snow loads of 20 PSF. *See* 24 C.F.R. § 3280.305(c)(3). Thus, the local ordinance has imposed construction and safety standards more stringent than the HUD requirements made pursuant to the Act.

The Court concludes that the ordinance is a construction and safety standard preempted by the Act, rather than a zoning or land use provision excluded from the Act. The load requirement of the ordinance specifically governs the "construction" of mobile homes, requiring mobile homes to be constructed in accordance with HUD's "Manufactured Home Construction and Safety Standards," with the exception that "all dwellings, including mobile homes, must meet the roof snow load and strength requirements applicable to site built structures." (Robinson Township Ordinance No. 98–04, Def.'s Br.Ex. 1.) The ordinance cannot reasonably be considered merely aesthetic, as it expressly concerns "construction" and "strength" requirements. The only reasonable purpose of the ordinance is to promote safety in making the roof less likely to collapse. The ordinance is expressly contrary to a HUD regulation which is part of its "Manufactured Home Construction and Safety Standards." The ordinance governs construction and safety. Therefore, the Court concludes that the ordinance is preempted by federal law.

## B. Exclusion of Plaintiffs' homes from the scope of the Act

█ The Township also argues that, even if the Act appears on its face to preempt the Township's ordinance, there is a genuine issue of material fact as to whether the manufactured homes built by Plaintiffs are excluded from the scope of the Act, such that the manufactured homes built by Plaintiffs would not be subject to the HUD roof and snow load regulations, and therefore the ordinance would not be preempted by the HUD regulations or violate M.C.L. § 125.2307(6). Under the Act, certain manufactured homes *may be* excluded from coverage under the Act by the Secretary of HUD if the manufacturer certifies that the structure is:

(1) designed only for erection or installation on a site-built permanent foundation;

(2) not designed to be moved once so erected or installed;

(3) designed and manufactured to comply with a nationally recognized model building code or an equivalent local code, or with a State or local modular building code recognized as generally equivalent to building codes for site-built housing, or with minimum property standards adopted by the Secretary pursuant to title II of the National Housing Act; and

(4) to the manufacturer's knowledge is not intended to be used other than on a site-built permanent foundation.

42 U.S.C. § 5403(h). The Township argues that if the manufactured homes built by Plaintiffs are excluded from coverage under the Act, there is no preemption issue because the HUD regulations are inapplicable to the Plaintiffs. The Township also argues that it is impossible to make a determination of whether the man-

ufactured homes built by Plaintiffs meet the four factors for exclusion from the Act because Plaintiffs have not yet responded to discovery requests submitted by the Township that specifically address whether Plaintiffs sell or manufacture structures that would fall within the exception to the Act.

However, Plaintiffs have come forward with evidence, namely the Affidavit of Dixie Morse of A1, that Plaintiffs have attempted to obtain a building permit for at least one HUD-certified manufactured home. (*See* Morse Aff. ¶ 4.) Under regulations promulgated by HUD interpreting the exception to the Act, a structure may qualify for exemption from the Act if it is manufactured in compliance with a nationally recognized building Code, such as the BOCA code (which the Township's ordinance purports to apply in this case) or the Southern Standard Building Code (the code the city sought to apply in *Colorado Manufactured Housing*). *See* 24 C.F.R. § 3282.12(b)(3)(i). Therefore, as a matter of logic, a HUD-certified home is not, and cannot be, a home built in compliance with some other nationally recognized model building code—the requirements are mutually exclusive.

Accordingly, the Court concludes that, as a matter of law, at least one of the structures Plaintiff attempted to obtain a building permit for did not fall into the exception under the Act. Therefore, the Court may properly reach the question of whether the ordinance is precluded by the Act, and holds that the ordinance is precluded by the Act.

## II.  State law claim

Plaintiffs also argue that the Robinson Township ordinance violates Michigan's statutory provision governing conflicts between local ordinances and HUD regulations as they relate to mobile homes. M.C.L. § 125.2307(6) states in part:

A local government ordinance shall not contain a manufacturing or construction standard that is incompatible with, or is more stringent than, a standard promulgated by the federal department of

housing and urban development pursuant to the national manufactured housing construction and safety standards act of 1974, 42 U.S.C. 5401 to 5426. M.C.L. § 125.2307(6).

The Michigan Supreme Court in *Gackler* interpreted this statute and held that the legislature had manifested an intention to specifically exclude from the statute's coverage ordinances similar to the ordinance at issue in that case, limiting application of the statute to ordinances which specifically regulate mobile home parks and mobile home industries. *See Gackler*, 427 Mich. at 580, 398 N.W.2d at 401. The Township's ordinance is not targeted at mobile home parks and mobile home industries, but instead is generally applicable to "all dwellings." (*See* Ordinance No. 98–04.) Because the Michigan Supreme Court's interpretation of a Michigan statute is binding on federal courts, the ordinance would be excluded from the scope of M.C.L. § 125.2307(6). Accordingly, summary judgment on Plaintiffs' state law claim will be entered in favor of Defendant.

## III.  Challenge to HUD regulation/Joinder of HUD

■ The Township also argues that, even if the Township's ordinance is preempted by the HUD regulations, the Township should be granted leave to add HUD as a party to challenge the validity of the HUD regulations, arguing that the roof and snow load regulation is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

After careful consideration, the Court concludes that it will deny Defendant's motion to join HUD as a third party defendant. Federal Rule of Civil Procedure 14, which governs third-party practice, allows a third party complaint to be served upon a person "who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Fed.R.Civ.P. 14(a). However, HUD would not be liable for any part of

Plaintiffs' claim against Robinson Township in this case. Furthermore, Plaintiffs do not appear to have a substantial interest in the outcome of potential litigation between the township and HUD over HUD's roof and snow load regulations, other than the interest in having a definite standard not subject to change. Finally, the addition of HUD would result in substantial delay in the adjudication of this case, prejudicing Plaintiffs, who are currently being harmed by the application of an ordinance which is preempted by HUD regulations which are currently valid. The Township will not be prejudiced by a denial of its motion to join HUD, as it may challenge the roof and snow load regulation directly by filing a separate lawsuit against HUD. Accordingly, Defendant's motion to add HUD as a third party defendant will be denied.

### Conclusion

For the foregoing reasons, summary judgment on Plaintiffs' federal claim will be entered in favor of Plaintiffs, and summary judgment on Plaintiffs' state claim will be entered in favor of Defendant.

An Order and Judgment consistent with this Opinion will be entered.

### ORDER AND JUDGMENT

For the reasons stated in the Opinion entered on this date,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment (docket no. 6) is **GRANTED IN PART AND DENIED IN PART.** Judgment is entered in favor of Plaintiffs on Count I of Plaintiffs' complaint (Violation of Federal Preemption Law) and judgment is entered in favor of Defendant on Count II of Plaintiffs' complaint (Violation of State Law).

It is declared that the roof and snow load capacity requirements of Robinson Township Ordinance No. 98–04 are preempted by federal law. Defendant is enjoined from enforcing any snow load requirement governing manufactured homes that deviates from the standards set forth in 24 C.F.R. § 3280.305(c)(3).

**IT IS FURTHER ORDERED** that Defendant's Motion for Leave to File Third–Party Complaint (docket no. 12) is **DENIED.**

This case is completed.