PUBLISH

February 7, 2013

UNITED STATES COURT OF APPEALS

Elisabeth A. Shumaker
Clerk of Court

TENTH CIRCUIT

ROGER SCHANZENBACH,

Plaintiff - Appellant,

v.

TOWN OF OPAL, WYOMING, a
Wyoming municipal corporation;
KAREN RAWLINGS, an individual;
JEREMY SUMMERS, an individual;
ELVA BIENZ, an individual; WILLA
ROOSE, an individual,

Defendants - Appellees.

No. 11-8093

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. NO. 1:10-CV-00281-NDF)

Kathleen E. McDonald (Stephen C. Clark, pro hac vice, on the briefs), Jones
Waldo Holbrook & McDonough PC, Salt Lake City, Utah, for Plaintiff -
Appellant.

Richard Rideout, Law Offices of Richard Rideout, PC, Cheyenne, Wyoming, for
Defendants - Appellees.

Before **LUCERO**, **HARTZ**, and **MATHESON**, Circuit Judges.

**HARTZ**, Circuit Judge.

Plaintiff Roger Schanzenbach owned several properties in the Wyoming town of Opal. Intending to install mobile manufactured homes on these properties, he applied for permits with town authorities. The town council issued several building permits to Schanzenbach but shortly thereafter enacted an ordinance that included a provision banning the installation of any manufactured home that was older than 10 years at the time of the relevant permit application (the 10-Year Rule). When the permits were about to lapse and Schanzenbach requested an extension, the town council denied his request. It also rejected his applications for new permits because the proposed houses were more than 10 years old.

Schanzenbach brought an action against Opal and its town council in the United States District Court for the District of Wyoming. He asserted a claim that the 10-Year Rule was preempted by the National Manufactured Housing Construction and Safety Standards Act of 1974 (the Manufactured Housing Act) as well as a variety of constitutional claims. The district court awarded summary judgment to the defendants. Schanzenbach's appeal raises claims based on preemption, equal protection, and substantive due process. We affirm the district court's grant of summary judgment on these claims. The 10-Year Rule was not preempted and the rule was sufficiently rational to survive an equal-protection or substantive-due-process challenge.

## I.    BACKGROUND

Schanzenbach owned several lots in Opal, a town of less than 200 people. In November 2008 he applied for building permits to install four manufactured homes, one on each of four consecutive lots. All four homes were more than 10 years old at the time. On January 21, 2009, the town council approved the permits. Each permit stated that it "shall expire by limitations and become null and void if construction or work authorized is not commenced within forty-five (45) days" of the estimated completion date of December 31, 2009 (that is, by February 14, 2010). Aplt. App. at 45, 48, 51, 54.

In the following weeks the town council began considering Ordinance 2009-001, entitled "An Ordinance Regulating Construction and Standards for Buildings Placed in the Town of Opal." *Id.* at 93 (capitalization omitted). The ordinance was approved on March 23, 2009, and became effective on that date. It contains the 10-Year Rule, which restricts the age of houses brought into Opal. Under the ordinance, "Any building moved into the town to be placed on any lot shall be no more than ten (10) years of age at the time of application. Proof of construction or manufacture date must be provided at time of application." *Id.*

Although Schanzenbach apparently spent about $27,000 between March and November of 2009 in preparing for construction on his lots in Opal, in late November he wrote the town council a letter explaining that the start of construction would be delayed until the following Spring, after the required

commencement date of February 14, 2010. Schanzenbach requested a two-year extension on the four building permits, but the town council denied the extension on December 8. Defendant Jeremy Summers, the mayor of Opal, wrote Schanzenbach a letter the following August stating that the reason for the denial was that the manufactured homes did not meet the requirements of the 10-Year Rule. Schanzenbach submitted applications for new building permits in September 2010, but Mayor Summers rejected them for noncompliance with the 10-Year Rule.

In December 2010 Schanzenbach filed his complaint against the town of Opal; Mayor Summers; Karen Rawlings, the mayor during 2009 and part of 2010; and two members of the town council (collectively, Defendants). The individuals were sued only in their official capacities. Schanzenbach's complaint asserted (1) that Ordinance 2009-001 was preempted by the Manufactured Housing Act, *see* 42 U.S.C. §§ 5401–5426; (2) that the ordinance violated his constitutional rights "under the Commerce Clause, the Fourteenth Amendment, and the Privileges and Immunities Clause," Aplt. App. at 173; and (3) that the town had intentionally interfered with his economic relations with the prospective renters of the manufactured homes. He sought damages, attorney fees, and declaratory and injunctive relief.

Defendants and Schanzenbach both moved for summary judgment. Schanzenbach's pleadings on the motions explicitly raised for the first time the

arguments that the 10-Year Rule violated his substantive-due-process and equal-protection rights. The district court awarded summary judgment to Defendants on all claims. As relevant here, it ruled that Schanzenbach's substantive-due-process and equal-protection claims were both untimely raised and meritless and that the 10-Year Rule was not preempted by the Manufactured Housing Act.

Schanzenbach's arguments on appeal are (1) that the district court erred in holding that the Manufactured Housing Act does not preempt the 10-Year Rule; (2) that the court erred in holding that his substantive-due-process and equal-protection claims had been raised too late and therefore should not be decided on the merits; (3) that the 10-Year rule denies him equal protection because it treats manufactured homes differently by age without a rational basis for doing so; and (4) that the 10-Year Rule denies him substantive due process because it arbitrarily and unreasonably interferes with a protected property interest.

## II.    DISCUSSION

Because Schanzenbach is appealing from a grant of summary judgment, we review the district court's decision de novo, "applying the same standards that the district court should have applied." *Merrifield v. Bd. of Cnty. Comm'rs*, 654 F.3d 1073, 1077 (10th Cir. 2011) (internal quotation marks omitted). Summary judgment is appropriate if the pleadings and the record establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See id.* "We can affirm on any ground supported by the record,

-5-

so long as the appellant has had a fair opportunity to address that ground." *Id.*

(brackets and internal quotation marks omitted).

## A.    Preemption of the 10-Year Rule

Schanzenbach argues that the district court erred in granting summary judgment to Defendants on his claim that the 10-Year Rule is invalid under the Constitution's Supremacy Clause because it is preempted by the Manufactured Housing Act.  *See* U.S. Const. art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.").  The court held that the 10-Year Rule is not preempted because it regulates the aesthetics of manufactured homes rather than their construction or safety.

On appeal Schanzenbach insists that there are genuine issues regarding whether the Act and its accompanying regulations "expressly or by inference show an intent to preempt such local laws" and whether Congress "legislated comprehensively with regard to durability standards for manufactured homes." Aplt. Br. at 16.  We are not persuaded.  Because we hold that the Act does not preempt the ordinance, we need not address whether there exists a private right of action to enforce the provisions of the Act.

The Supreme Court has recently provided a useful summary of preemption

doctrine:

> There is no doubt that Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision.
>
> State law must also give way to federal law in at least two other circumstances. First, the States are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance. The intent to displace state law altogether can be inferred from a framework of regulation so pervasive that Congress left no room for the States to supplement it or where there is a federal interest so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.
>
> Second, state laws are preempted when they conflict with federal law. This includes cases where compliance with both federal and state regulations is a physical impossibility and those instances where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. In preemption analysis, courts should assume that the historic police powers of the States are not superseded unless that was the clear and manifest purpose of Congress.

*Arizona v. United States*, 132 S. Ct. 2492, 2500–01 (2012) (citations, ellipses, and

internal quotation marks omitted).

An examination of the Manufactured Housing Act shows that its core

concern is the creation of uniform standards for construction and safety of

manufactured housing in the United States, with the resulting reduction in the

costs of such homes. The Act recites the following purposes:

> (1) to protect the quality, *durability*, *safety*, and affordability of manufactured homes;

(2) to facilitate the availability of affordable manufactured homes and to increase home ownership for all Americans;

(3) to provide for the establishment of practical, *uniform*, and, to the extent possible, performance-based Federal *construction standards* for manufactured homes;

(4) to encourage innovative and cost-effective construction techniques for manufactured homes;

(5) to protect residents of manufactured homes with respect to personal injuries and the amount of insurance costs and property damages in manufactured housing, consistent with the other purposes of this section;

(6) to establish a balanced consensus process for the development, revision, and interpretation of Federal *construction and safety* standards for manufactured homes and related regulations for the enforcement of such standards;

(7) to ensure *uniform* and effective enforcement of Federal *construction and safety* standards for manufactured homes; and

(8) to ensure that the public interest in, and need for, affordable manufactured housing is duly considered in all determinations relating to the Federal standards and their enforcement.

42 U.S.C. § 5401(b) (emphases added). The Act instructs the Secretary of Housing and Urban Development (HUD) to promulgate regulations establishing "appropriate Federal manufactured home construction and safety standards." *Id.* § 5403(a)(1); *see id.* § 5402(11) (defining *Secretary*).

The HUD standards govern many different facets of a manufactured home's design and construction. They prescribe requirements "to assure the adequacy of architectural planning considerations which assist in determining a safe and

healthful environment," 24 C.F.R. § 3280.101 (2012), such as minimum window areas to assure adequate light and ventilation, *see id.* § 3280.103(a), ceiling heights, *see id.* § 3280.104, and room dimensions, *see id.* § 3280.109. They impose fire-safety requirements, *see id.* §§ 3280.201–.209; set standards for building materials, *see id.* § 3280.304; and regulate a home's thermal protection, *see id.* §§ 3280.501–.511, its plumbing systems, *see id.* §§ 3280.601–.612, its heating and cooling systems, *see id.* §§ 3280.701–715, and its electrical systems, *see id.* §§ 3280.801–.816.

In furtherance of the Act's purpose of providing uniform construction standards, the Act explicitly preempts conflicting local standards in § 5403(d), entitled "Supremacy of Federal standards." It states:

> Whenever a Federal manufactured home construction and safety standard established under this chapter is in effect, *no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any manufactured home covered, any standard regarding the construction or safety applicable to the same aspect of performance of such manufactured home which is not identical to the Federal manufactured home construction and safety standard.* Federal preemption under *this subsection shall be broadly and liberally construed* to ensure that disparate State or local requirements or standards do not affect the uniformity and comprehensiveness of the standards promulgated under this section nor the Federal superintendence of the manufactured housing industry as established by this chapter. Subject to section 5404 of this title, there is reserved to each State the right to establish standards for the stabilizing and support systems of manufactured homes sited within that State, and for the foundations on which manufactured homes sited within that State are installed, and the right to enforce compliance with such standards, except that such standards shall be consistent with the purposes of

> this chapter and shall be consistent with the design of the manufacturer.

42 U.S.C. § 5403(d) (emphasis added). HUD, under the Secretary's statutory authority "to issue, amend, and revoke such rules and regulations as he deems necessary" to implement the Act, *id.* § 5424, has promulgated regulations that further address the preemptive effect of the HUD standards. In relevant part they provide:

> (a) No State manufactured home standard regarding manufactured home *construction and safety* which covers aspects of the manufactured home governed by the Federal standards shall be established or continue in effect with respect to manufactured homes subject to the Federal standards and these regulations unless it is identical to the Federal standards.
>
> . . . .
>
> (d) No State or locality may establish or enforce *any rule or regulation or take any action that stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. The test* of whether a State rule or action is valid or must give way *is whether the State rule can be enforced or the action taken without impairing the Federal superintendence of the manufactured home industry* as established by the Act.

24 C.F.R. § 3282.11 (emphases added).

That the preemptive effect of the Manufactured Housing Act is limited to local laws governing the construction and safety of manufactured homes is sufficiently clear that Schanzenbach does not argue otherwise. His only gloss on the preemptive effect of the Act is that he contends that construction and safety

-10-

encompass "durability," a proposition that we can concede for purposes of this appeal.

Although this court has not yet had occasion to decide whether a local law governed construction or safety within the preemptive scope of the Act and its regulations, the Fifth and Eleventh Circuits have done so. We find their guidance helpful. Two Eleventh Circuit decisions provide useful bookends. In *Scurlock v. City of Lynn Haven, Florida*, 858 F.2d 1521, 1523–25 (11th Cir. 1988), the Eleventh Circuit held that a local ordinance was preempted because it required manufactured homes to adhere to local building and electrical codes that were more stringent than the safety standards imposed by the Act and its regulations. In *Georgia Manufactured Housing Ass'n, Inc. v. Spalding County, Georgia*, 148 F.3d 1304, 1306 (11th Cir. 1998), by contrast, the court denied a claim that the Manufactured Housing Act preempted a local ordinance requiring manufactured homes to have roofs that rose by at least 4 inches for every 12 inches of horizontal run. It held that the ordinance was not preempted because, unlike the measure in *Scurlock*, the pitched-roof requirement had no "purported basis in consumer protection," but instead was simply "a straight-forward declaration that the County does not want low-pitched roofs in its residential areas." *Id.* at 1310. The court explained that "the construction and safety standards preempted by the Act are those standards that protect consumers from various potential hazards associated with manufactured housing," whereas "a zoning requirement related to

-11-

aesthetics is not preempted because the goals and effects of such a standard have nothing to do with consumer protection, but instead seek to control the aesthetic quality of a municipality's neighborhoods." *Id.*

The Fifth Circuit has adopted a similar view. In *Texas Manufactured Housing Ass'n, Inc. v. City of Nederland*, 101 F.3d 1095, 1098 (5th Cir. 1996), the court confronted a Manufactured Housing Act preemption challenge to a local ordinance that "prohibit[ed] the placement of trailer coaches on any lot within city limits except in a duly authorized trailer park." *Id.* (internal quotation marks omitted). It held that the ordinance regulated merely "the placement and permitting of trailer coaches for the purpose of protecting property values"; it did not "expressly link its provisions in any way to local safety and construction standards." *Id.* at 1100. It therefore was not preempted by the Act. *See id.*

Opal's 10-Year Rule is far more similar to the ordinances in *Georgia Manufactured* and *Texas Manufactured* than to the ordinance in *Scurlock*. Unlike the ordinance in *Scurlock*, the 10-Year Rule does not purport to supplant any specific standard imposed by the Act or its regulations—at least, not any standard that Schanzenbach has identified. Rather, the rule simply embodies the town council's judgment that the aesthetics and property values of its neighborhoods would be protected by preventing the installation of homes older than 10 years. It is not a rule that regulates "the construction or safety" of manufactured homes,

-12-

42 U.S.C. § 5403(d), nor does it "stand[] as an obstacle" to any provision or purpose of the Act, 24 C.F.R. § 3282.11(d).

Schanzenbach argues that the 10-Year Rule relates to the durability of manufactured homes. We disagree. The durability of the home is irrelevant under the ordinance. The rule does not, for example, prohibit all manufactured housing that is not durable enough to last more than 10 years. No matter how durable the home, its age may bar it from being moved into town. And a home less than 10 years old when moved into town is entitled to remain no matter how "undurable" it may be.

Schanzenbach urges us to examine the 10-Year Rule in light of the surrounding provisions of Ordinance 2009-001. He points out that the ordinance contains numerous requirements that clearly govern construction and safety—for example, it prescribes minimum structural, plumbing, and electrical standards—and that Defendants have conceded that these provisions are preempted by the Act. But not all the provisions of Ordinance 2009-001 concern construction or safety: for example, one is essentially the same as the pitched-roof requirement in *Georgia Manufactured*. In any event, the only provision challenged by Schanzenbach is the 10-Year Rule. He has offered no argument that the ordinance must be stricken in its entirety (including the 10-Year Rule) because some provisions are preempted. We therefore affirm the district court's

grant of summary judgment on the claim that Opal's 10-Year Rule is preempted by federal law.

## B.     Equal Protection

Schanzenbach argues that the 10-Year Rule violates the Equal Protection Clause because it distinguishes between manufactured homes older than 10 years and those younger than 10 years without a rational basis for doing so.  This argument is meritless.[1]

Schanzenbach does not suggest that he belongs to a suspect class or that he is asserting a fundamental constitutional right.  Therefore, the 10-Year Rule is "presumed to be valid and will be sustained if the classification drawn by the [rule] is rationally related to a legitimate state interest."  *Coal. for Equal Rights, Inc. v. Ritter*, 517 F.3d 1195, 1199 (10th Cir. 2008) (internal quotation marks omitted).  "[B]ecause we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature."  *Powers v. Harris*, 379 F.3d 1208, 1217 (10th Cir. 2004) (internal quotation marks omitted).  As Schanzenbach concedes, preserving neighborhood

---

[1]The district court ruled that Schanzenbach's equal-protection and substantive-due-process claims had been raised too late in the litigation and that allowing him to assert them in his summary-judgment motions was prejudicial to Defendants.  We need not review this ruling because we affirm on the district court's alternative ground that Defendants were entitled to summary judgment on the merits of both claims.

aesthetics is a legitimate government interest. Thus, we must uphold the 10-Year Rule "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Copelin–Brown v. N.M. State Pers. Office*, 399 F.3d 1248, 1255 (10th Cir. 2005) (internal quotation marks omitted). In our view, the town council could have rationally believed that a manufactured home more than 10 years old that is being moved onto a lot in the community is likely to be less attractive than the homes in the vicinity of the lot. There could certainly be exceptions, but there need not be a perfect fit between purpose and achievement for a law to pass constitutional muster. "[W]here rationality is the test, a [town] does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect." *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 316 (1976) (per curiam) (internal quotation marks omitted) (upholding mandatory retirement at age 50 for police officers). The district court properly granted summary judgment on the equal-protection claim.

### C.    Substantive Due Process

Schanzenbach argues that Opal's 10-Year Rule violates his right to substantive due process because it is not rationally related to the town's interest in preserving neighborhood aesthetics. We disagree.

Municipalities enjoy broad latitude in regulating zoning and property uses; "before a zoning ordinance can be declared unconstitutional on due process grounds, the provisions must be clearly arbitrary and unreasonable, having no

substantial relation to the public health, safety, morals, or general welfare."
*Messiah Baptist Church v. Cnty. of Jefferson*, 859 F.2d 820, 822 (10th Cir. 1988).

The arbitrariness of government action must be "extreme" for the action to violate substantive due process. *Klen v. City of Loveland*, 661 F.3d 498, 513 (10th Cir. 2011). As we have noted, Defendants could have rationally concluded that the 10-Year Rule would help preserve neighborhood aesthetics. The rule is not clearly arbitrary or unreasonable. Because we can affirm the district court's decision on this ground, we need not address whether the rule infringed a protected property interest of Schanzenbach. *See Nichols v. Bd. of Cnty. Comm'rs*, 506 F.3d 962, 969 (10th Cir. 2007) (substantive-due-process claim cannot proceed unless the challenged official action deprived plaintiff of a protected property interest).

## III. CONCLUSION

We AFFIRM the judgment of the district court.